MORRIS J. FEINSON *v.* CONSERVATION COMMISSION OF THE TOWN OF NEWTOWN

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and HEALEY, Js.

Argued February 6—decision released April 29, 1980

*Paul E. Pollock,* for the appellant (defendant).

*Terry L. Sachs,* for the appellee (plaintiff).

Peters, J. This case arises out of the denial of an application to conduct a regulated activity in an inland wetland. The plaintiff, Morris J. Feinson, appealed from the action of the defendant Newtown Conservation Commission to the Superior Court. That court, *McGrath, J.,* sustained the appeal and ordered the application to be approved. The defendant thereupon sought and was granted certification, and now appeals from the judgment rendered for the plaintiff.

The trial court heard the case upon the record before the Newtown Conservation Commission (hereinafter the commission), the duly designated municipal commission entrusted with enforcement of the Inland Wetlands and Water Courses Act. General Statutes §§ 22a-36 through 22a-45. The record reveals that the plaintiff Feinson, the owner of a three and one-half acre parcel of land in Newtown, filed a revised application on May 17, 1976, for a license to conduct a regulated activity in an inland wetland. His application sought permission to deposit three hundred cubic feet of fill on part of his property in order to provide a subsurface sewage disposal system to service a one-family house that he intended to build. Because his property is transversed by a stream, and because the adjoining seventy-five foot embankment had been designated an inland wetland area, a license was required before fill could be deposited at the contemplated site, sixty to seventy-five feet away from the stream.

After various intermediate proceedings before the commission, a public hearing was held on November 15, 1976, on the plaintiff Feinson's application. Edward G. Shelomis, a design engineer hired by the plaintiff, presented his technical report and responded to questions. Although the commission had invited comments from the town sanitarian, the town building inspector, the town planning and zoning commission, and the county soil and water conservation district, no public official appeared, either in person or by written communication, to contest the application. No member of the public spoke on the application. Shelomis was the only witness and he was questioned only by some of the commissioners. At a subsequent meeting of the commis-

sion on December 1, 1976, to which neither the plaintiff nor his engineer had been invited, although other non-members of the commission were in attendance, the plaintiff's application was, after discussion, denied.

The plaintiff was notified of the denial of his application by letter dated December 5, 1976. The letter stated: "The reasons for denial are as follows: 1. The groundwater and topography, together with the design and location of the proposed septic system, will cause effluent to surface, thereby polluting the adjacent wetlands and watercourse. 2. The system as designed does not provide for adequate renovation of the effluent which will cause pollution of the adjacent wetlands and watercourse. Because of the above reasons the Commission found that there is a strong likelihood of leaching with a resulting adverse effect on water quality and aquatic life; that there will be adverse changes to the physical, chemical and biological properties of the water; and that the dangers of pollution will cause damage to the adjacent wetlands and watercourse with resulting injury and interference with health and safety."

Upon the subsequent appeal to the trial court from this denial of the plaintiff's application, certain matters were determined which are no longer at issue. The court concluded that the plaintiff was aggrieved by the action of the commission, and that the appeal was governed by the Uniform Administrative Procedure Act. General Statutes §§ 4-166 through 4-189.

The court then went on to determine that the action of the commission was clearly erroneous because the reasons given for the denial could not be

sustained in view of the reliable, probative evidence on the whole record.[1] The court further concluded that, since the plaintiff's appeal should be sustained, the commission should be ordered to approve the plaintiff's application. These two conclusions, one on the merits and the other on the remedy, are the two matters before us on this appeal.

The appeal on the merits turns on whether there was sufficient evidence on the record as a whole to support the decision of the commission. The record consists of the plaintiff's applications and the report of the plaintiff's expert witness, the interrogation of the expert witness at the public hearing, the discussion at the private meeting, and the knowledge of individual commission members derived from their viewing of the premises and their familiarity with the area in general. In appraising the sufficiency of this record, the court must determine only whether there was substantial evidence which reasonably supported the administrative decision, since " '[t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency.' " *Lawrence* v. *Kozlowski*, 171 Conn. 705, 708, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977); *O'Donnell* v. *Police Commission*, 174

---

[1] Judicial review of the judgment of an administrative agency is governed by General Statutes § 4-183 (g) which provides, in relevant part: "APPEAL TO SUPERIOR COURT. . . . (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: . . . (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

Conn. 422, 426, 389 A.2d 739 (1978); *Norwich v. Norwich Fire Fighters,* 173 Conn. 210, 214, 377 A.2d 290 (1977); *Balch Pontiac-Buick, Inc.* v. *Commissioner of Motor Vehicles,* 165 Conn. 559, 563, 345 A.2d 520 (1973); *Hotchkiss Grove Assn., Inc.* v. *Water Resources Commission,* 161 Conn. 50, 56, 282 A.2d 890 (1971).

In denying the plaintiff's application for a license, the defendant gave as reasons that it had made findings in accordance with §§ 4.13, 4.17, and 4.5 of the Newtown Wetlands and Watercourses Regulations. Section 4.1 requires the commission, with regard to its regulatory function, to make findings with respect to the environmental impact of the proposed action.[2] Section 4.5 requires findings with respect to "[t]he character and degree of injury to, or interference with, safety, health, or the reasonable use of property which would be caused or threatened. This includes recognition of potential damage from erosion, turbidity or siltation, loss of fish and other beneficial aquatic organisms, wildlife and vegetation; the dangers of flooding and pollution; and destruction of the economic, aesthetic, recreational and other public and private uses and values of wetlands and water courses."

The discussion which led to the denial of the license turned on the concern articulated by Julia Wasserman, a member of the commission, that there was an "extreme possibility of septic failure, constituting a public health hazard, with the introduc-

[2] The commission referred to two relevant subsections of § 4.1 relating to environmental impact:

"§ 4.13. Likelihood of siltation and leaching and any resulting adverse affects on water quality and aquatic life."

"§ 4.17. Changes to the physical, chemical and biological properties of the water or soil and their impact."

tion of septic effluent into surface waters." Although Wasserman is not an engineer, the commission apparently relied heavily on the data she presented. No other evidence contesting the plaintiff's application was presented to the commission, nor did any other commission member, so far as the record discloses, make a comprehensive presentation with regard to the plaintiff's application. The only expert evidence was that offered by the plaintiff, and that the commission impliedly rejected.

The question before us is whether, on a subject as technically sophisticated and complex as pollution control, commissioners who have not been shown to possess expertise in this area may rely on their own knowledge, without more, in deciding to deny a license to conduct a regulated activity. We agree with the conclusion of the trial court that this record does not disclose sufficient reliable evidence to sustain the action taken by the defendant commission.

The question in this precise form is one that we have not previously had the occasion to consider. We have in the past permitted lay members of commissions to rely on their personal knowledge concerning matters readily within their competence, such as traffic congestion and street safety; *Welch* v. *Zoning Board of Appeals,* 158 Conn. 208, 214, 257 A.2d 795 (1969); *Forest Construction Co.* v. *Planning & Zoning Commission,* 155 Conn. 669, 675, 236 A.2d 917 (1967); *Atlantic Refining Co.* v. *Zoning Board of Appeals,* 150 Conn. 558, 561–62, 192 A.2d 40 (1963); *Gulf Oil Corporation* v. *Board of Selectmen,* 144 Conn. 61, 66, 127 A.2d 48 (1956); and local property values. *Holt-Lock, Inc.* v. *Zoning & Planning Commission,* 161 Conn. 182, 191, 286 A.2d 299

(1971); *Cameo Park Homes, Inc.* v. *Planning & Zoning Commission,* 150 Conn. 672, 679–80, 192 A.2d 886 (1963). We have permitted a commission composed of experts to rely on its own expertise within the area of its professional competence; *Jaffe* v. *State Department of Health,* 135 Conn. 339, 349–50, 64 A.2d 330 (1949); but in that case we recognized as well that expert testimony may be required when the question involved goes beyond "the ordinary knowledge and experience" of the trier of fact. Id., 350. See also *Toomey* v. *Danaher,* 161 Conn. 204, 210, 286 A.2d 293 (1971); *Kohrs* v. *Flemming,* 272 F.2d 731, 736 (8th Cir. 1959); *Cullers* v. *Commissioner of Internal Revenue,* 237 F.2d 611, 616 (8th Cir. 1956); *Baur* v. *Mesta Machine Co.,* 405 Pa. 617, 632–33, 176 A.2d 684 (1961); 2 Davis, Administrative Law Treatise § 14.13 (1958).

The sparsity of reliable evidence in this record is underscored by the fact that the commission, in relying on its own knowledge and experience, acted in a manner which placed its data base beyond the plaintiff's scrutiny. Nowhere in the public hearing, or at any other time and place, was the plaintiff afforded a fair opportunity to hear the commission's fears and to attempt to allay them. The questioning of the plaintiff's witness Shelomis at the public hearing did not give warning that his evidence was to be entirely discredited; on the contrary, that hearing as transcribed suggests that the proffered evidence was on the whole satisfactory to the commission. If an administrative agency chooses to rely on its own judgment, it has a responsibility to reveal publicly its special knowledge and experience, to give notice of the material facts that are critical to its decision, so that a person adversely affected thereby has an opportunity for rebuttal at

an appropriate stage in the administrative proceedings. *Parsons* v. *Board of Zoning Appeals*, 140 Conn. 290, 292–93, 99 A.2d 149 (1953); cf. *Western Alfalfa Corporation* v. *Air Pollution Variance Board*, 510 P.2d 907, 910 (Colo. App. 1973), rev'd on other grounds, 416 U.S. 861, 94 S. Ct. 2114, 40 L. Ed. 2d 607 (1974); and see 2 Davis, Administrative Law Treatise § 14.13, n.10, p. 325 (1958).

Judicial review of administrative process is designed to assure that administrative agencies act on evidence which is probative and reliable and act in a manner consistent with the requirements of fundamental fairness. From both perspectives, we are compelled to conclude that a lay commission acts without substantial evidence, and arbitrarily, when it relies on its own knowledge and experience concerning technically complex issues such as pollution control, in disregard of contrary expert testimony, without affording a timely opportunity for rebuttal of its point of view.

The trial court was therefore correct in its determination that the action of the commission should be set aside and the plaintiff's appeal sustained. The court thereupon ordered the commission to approve the plaintiff's application. The propriety of this remedial order is the second issue before us on this appeal.

The applicable provisions of General Statutes § 4-183 (g) permit the trial court to "affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the [agency's] decision . . . ." When agency action is overturned, as here, because of invalid or insufficient findings, we have held that a court must ordinarily remand the matter under con-

siteration to the agency for further consideration. *Hartford* v. *Hartford Electric Light Co.,* 172 Conn. 71, 73, 372 A.2d 131 (1976); *Bogue* v. *Zoning Board of Appeals,* 165 Conn. 749, 753–54, 345 A.2d 9 (1974); *Watson* v. *Howard,* 138 Conn. 464, 470, 86 A.2d 67 (1952). It is not apparent from this record that the commission may not have authority to accept the plaintiff's application with conditions or modifications that would diminish the risk of septic system failure. Because it does not appear as a matter of law that there is only one single conclusion that the commission could reasonably reach, a direct order to the commission is legally unwarranted. *Thorne* v. *Zoning Commission,* 178 Conn. 198, 206, 423 A.2d 861 (1979).

There is error in part, the judgment is set aside and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.