[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Procedural Background
This is an appeal from the Inland Wetlands Commission of the Town of Willington. The appeal concerns a 53.25 acre sub-division known as Fenton Valley which was approved for the construction of 14 lots on August 19, 1986. The area is zoned R-80 which requires 80,000 square feet for the construction of a residence. At the time of the approval the Planning Commission imposed a condition that:
 ". . .disturbance of wetlands by road or individual lots will need permit from the DEP or local wetlands agencies prior to construction."
Facts
In November of 1990, an application was made to locate a residence on Lot 4 of the sub-division. This residence would have had its septic system located within a 100 foot buffer area boarding the wetlands. The Wetlands Commission denied that application because the septic system was in the wetland buffer and consequently, in the opinion of the Commission, threatened the wetlands.
When the subject application was submitted in 1991, the Plaintiff changed the septic design to respond to the 1990 objections and relocated the septic system of the proposed residence entirely outside of the 100-foot buffer. Examination of the record in this case would indicate the Plaintiff appears to have satisfied the Commission on the location of the septic system. The Commission gave five reasons for denying the 1991 application none of which concerned the septic system. The reasons given for the denial were;
 "1. The area is not suitable for the proposed activity.
 2. Land would be used beyond what is reasonable, considering the number of lots already approved.
 3. Natural resources in the area will be used beyond reason once the existing approved lots are developed. CT Page 3098
 4. Because of the excessive slopes, the detrimental environmental impact of construction activity on the lot would be:
 (a) an unmanageable sedimentation and erosion problem and, (b) slopes too severe to insure stabilization.
 5. A feasible and prudent alternative would be incorporating the lot into existing adjacent lots."
The Defendants in the case are the Willington Inland Wetlands and Watercourses Commission, Kenneth Metzler, Chairman of that Commission and the Commissioner of Environmental Protection of the State of Connecticut. The State of Connecticut, through the Office of the Attorney General, participated in the argument of the case and trial.
There was no public hearing required on the application and no public hearing was held. Because of the absence of the public hearing, the record is sparse. After a thorough examination of the record, the Court can find no reason to deny the permit other than the reasons given by the Commission for its denial.
Discussion
The Court finds that reasons numbered one, two and three are more properly related to the jurisdiction of the Planning Commission in approving the sub-division than they are to any Wetlands question. In addition, the Court finds no evidence in the record to support reasons one, two and three.
Reason five is more related to the question of a confiscatory taking than it is to the question of whether or not damage will be done to the wetlands. In the absence of evidence, to show potential damage to the wetlands, reason five, by itself, does not support denial of the application.
The pivotal question for the Court to determine is whether reason four, which clearly would support the denial of the permit if supported by the evidence, is supported by any evidence in the record. CT Page 3099
Both the Town and the Developer had expert opinions rendered at the hearing on the question of excessive slopes and unmanageable sedimentation. A report by Harvey Luce, PHD, dated June 11, 1990, entitled "Potential Environmental Impacts of the Development of Lot 4, Fenton Valley Sub-Division, Willington, Connecticut" was submitted on behalf of the applicant.
That report contained the following expert opinion:
 "Because of the steep slopes on Lot 4, the potential for sediment to be deposited in the wetlands due to erosion during construction is, in my opinion, of greater concern than that of any potential contaminant reaching the wetlands from the septic system. This is not to say that this is a serious potential problem. Forested wetlands of the type that occur on Lot 4 have a relatively high capacity to absorb sediments and remain viable and productive. While the steep slopes make the soils on portions of Lot 4 highly susceptible to erosion, this is mitigated to some extent by the fact that the slopes are short in length and the soils have relatively low K values, a measure of the soil's tendency to erode.
 It should be noted that the individual erosion and sedimentation and control plans are required to be filed prior to the development of each lot. It is important that this requirement be carefully enforced and that compliance with the plans be monitored."
On the Town's behalf, a memorandum was submitted to Susan Yorgensen from Carl F. Acimobic, PE, dated March 7, 1991 entitled, "Site Plan and Sub-Surface Disposal, Lot 4, Fenton Valley Nipmuck Road, Willington."
Paragraph 6 of that memorandum prepared on behalf of the Town contains the following expert opinion:
 "The sedimentation and erosion control appears to be adequate in scope and detail. I would, however, recommend close monitoring and constant CT Page 3100 maintenance during construction, again because of the steep slopes."
Based upon the testimony of the Plaintiff's appraiser, Richard F. Haggerty, the Court finds that Lot 4 contained 3.58 acres and that if used as a building lot had market value of $45,000. Mr. Haggerty further testified that if not used as a building lot, the only reasonable alternative would be to split lot 4 between lots 3 and 5, and in that event the lot would have a value of $1,000. The Court does not find Mr. Haggerty's testimony as to the $1,000 value entirely persuasive. It does find if lot 4 is not used as a building lot, the only reasonable alternative is a split between lots 3 and 5. Lot 4 may have a value somewhat in excess of the $1,000 testified to by Mr. Haggerty. However, the Court finds that its value for such a use under no circumstances would exceed several thousand dollars and would be substantially less then its $45,000 value as a building lot. The Court is convinced by the testimony that if the property is not used as a building lot, there will be an extreme and drastic reduction in its Fair Market Value.
DECISION OF THE COURT
The Court finds that the plaintiff is aggrieved. The Court further finds that both the Plaintiff's expert and the Town's expert agree on the adequacy of the slope and sedimentation plan that was submitted. Searching the record, the Court can find no evidence to support reason No. 4. Defendant argued at trial that reason No. 4 was supported by the personal knowledge of the members of the Defendant Commission. However, there is nothing in the record to indicate that the Commission applied such personal knowledge. The Supreme Court has held in Feinson v. Newtown,180 Conn. 421 (1980):
 "If an administrative agency chooses to rely on its own judgment, it has a responsibility to reveal publicly its special knowledge and experience, to give notice of the material facts that are critical to its decision, so that a person adversely affected thereby has an opportunity for rebuttal at an appropriate stage in the administrative process," Feinson at 429. CT Page 3101
It is the holding of the Court that reasons 1, 2, 3 and 5 would not support the Commission's rejection of the application. Further it is the holding of the Court that reasons 1, 2 and 3 are not supported by any evidence in the record. Reason 4, which would be sufficient to deny the application, is not supported by any evidence in the record and, in fact, is contradicted by the expert testimony of both the Plaintiff's expert and the Defendant's expert. Reason 4 cannot be supported by the personal knowledge of the Commission because there is no attempt to comply with the Supreme Court's mandate in Feinson.
For the foregoing reasons, the Court finds there is no basis for the Defendant's denial of the Plaintiff's application for a wetlands permit.
Because the Court finds no basis for the denial of the permit, it reverses the action of the Willington Inland Wetlands and Watercourse Commission and remands the matter to the Commission for action not inconsistent with this opinion.
Our Supreme Court has recognized in Chevron Oil v. Shelton, 170 Conn. 146 (1976), a zoning case concerning ZBA action on a variance, that if the administrative agency can reach only a single conclusion the Court may not only remand but may direct the agency to take a particular action, Chevron at 153. However, the Supreme Court has also held in Feinson at 430:
 "Because it does not appear as a mater of law that there is only one single conclusion that the Commission could reasonably reach, a direct order to the Commission is legally unwarranted." In a second wetlands case, Milardo v. Haddam, 27 Conn. App. 214
(1992), the Appellate Court held:
 "Here, the record contains no evidence to indicate whether there are any foreseeable alternatives to the Plaintiff's proposal" at Page 225.
Although the Court is at a loss to see any course of action, other than the granting of the permit, which would be consistent with this opinion; the Court sees no significant difference between the instant case and either Feinson or CT Page 3102 Milardo with regard to a directed action. Accordingly, the Court reverses and remands for action not inconsistent with this opinion but stops short of directing the issuance of the permit.
BY THE COURT,
Kevin E. Booth Judge, Superior Court