[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from the decision of the Town of Simsbury Planning Commission granting plaintiff's application for subdivision approval, but reducing the number of approved lots from five to three. The plaintiff is the owner of the property in CT Page 11631 question, and complains in this appeal that the defendant erred by authorizing only three instead of five lots.
The basic facts giving rise to this appeal are not disputed. The plaintiff is the owner of a tract of land in Simsbury whose borders are 1200 to 2400 feet from the Farmington River. The site is at the foot of a mountain and is surrounded on its western border by wetlands. The rear of the property slopes downward toward the Farmington River.
The plaintiff's original application, which was filed in September, 1994, requested approval for a six lot subdivision. After two hearings, in which concerns about possible flooding and septic problems were raised, the plaintiff resubmitted its application and requested a five lot subdivision. The principal dispute before the defendant Commission and the subject of this appeal is the potential septic and on and off site flooding problems caused by the proposed subdivision, and whether those problems, if established, justify the reduction in the number of lots from five to three.
The plaintiff presented three experts who addressed the septic and flooding concerns. The first expert, Wilson Alvord, who is a licensed engineer and surveyor, testified that the neighbors' septic and flooding problems were the result of their properties being located within the floodplain and in a wetlands area. By contrast, the proposed subdivision would be located above the 100-year flood plain. Based on this difference in location he concluded that plaintiff's proposal would not affect the septic or drainage systems of the off site neighbors. He did indicate, however, that due to the high water table on the plaintiff's property, there was an increased risk of wet basements. He proposed to address that possibility through the installation of footing drains.
The Simsbury Town Engineer testified that the increased run off of storm water from the proposed site would not be significant enough to affect the neighbors' property. Finally, a representative of the Farmington valley Health District testified that the site was suitable for the proposed septic systems.
In addition to the plaintiff's expert testimony, the Commission also received testimony from adjacent property owners. They indicated that in the spring the subject property so overflows with water that it resembles a skating rink and that CT Page 11632 one neighbor could not put a basement in her house, but instead built her house on a slab. Other neighbors testified that there is substantial runoff in the area and that the subject property cannot adequately hold the water. Others spoke of drainage problems that arose after the construction of another development on the mountain and of substantial drainage from the mountain and the absence of adequate drainage systems. The Commission also received a report from the Simsbury Conservation Commission that expressed its concern that "the increased runoff from land surfaces could produce flooding conditions under less than a 23-year flood plain." The Conservation Commission recommended changes in the design criteria to avoid that potential problem.
The defendant voted to approve the plaintiff's application, but with a number of modifications including the merger of the two rear lots, having a lower elevation, with the lots adjacent to them to create a three lot subdivision. In its statement of reasons, the Commission referred to the high watertable, drainage problems, and the potential flooding hazard. This appeal followed.
I. Aggrievement
As the record owner of the property in question, the plaintiff is aggrieved by the decision of the Commission to limit its approval of plaintiff's application to three lots. BossertCorp. v. Norwalk, 157 Conn. 279 (1968).
II. Standard of Review
"It is axiomatic that a planning commission, in passing on a [s]ubdivision application, acts in an administrative capacity and is limited to determining whether the plan complies with the applicable regulations. It is equally axiomatic that the trial court, in reviewing the the action of a planning commission regarding a resubdivision application, may not substitute its judgment for that of the planning commission." R.B. Kent Son v.Planning Commission, 21 Conn. App. 370, 373 (1990). "The decision of the Commission is reviewed in light of the record developed before it. It is enough to point out the reasonableness of the conclusions arrived at the essential question, in any case, is whether [the commission's decision] is reasonably supported. Court's do not substitute their own judgment for that of the Commission so long as an honest judgment has been reasonably and fairly exercised after a full hearing." Westport v. Norwalk,
CT Page 11633167 Conn. 151, 161 (1974) (internal quotations and citations omitted).
III. DISCUSSION
There are two basic issues in this appeal. The first is whether the defendant has the authority to approve the subdivision with fewer lots than requested by the plaintiff. The second is, assuming such modification was authorized, whether there was a substantial basis for the defendant ordering such modification.
The plaintiff first asserts that, having filed an application for a five lot subdivision, the Commission, if it were to approve the application at all, was required to authorize construction on all five lots. This argument is not supported by the relevant statutory or caselaw provisions. First, General Statutes § 8-26, by its very terms, provides that a Planning Commission has the authority to "approve, modify and approve, or disapprove any subdivision or resubdivision application" (emphasis supplied). This clause has been interpreted to include the authority to reduce the number of lots in a submitted plan if that plan poses a danger to the public health or safety. TimberTrails Corporation v. Planning Zoning Commission, 222 Conn. 380
(1992). In this case, therefore, the defendant was vested with the authority and discretion to reduce the number of approved lots upon the required finding that such modification was required by the public health or safety.
The plaintiff's remaining argument alleges that there was not a substantial basis for the Commission's decision to reduce the number of approved lots. The essence of the plaintiff's argument is that the Commission was required to accept what the plaintiff claims was its unrefuted expert testimony indicating that the five lot subdivision would not create either drainage or septic problems. Evaluation of that claim first requires consideration of the applicable regulations and the standards the Commission was required to apply in considering the plaintiff's application.
The defendant was required to render its decision in accordance with Section III of the Subdivision Regulations. In particular, Subsection 3 of Section III provides that "any land to be subdivided shall be of such character that it can be used for building purposes without danger to health and safety. No land subject to flooding shall be subdivided for residential CT Page 11634 purposes or for any other use which will aggravate the flood hazard. No land shall be subdivided without water supply, means of drainange [drainage] and sanitary sewerage disposal adequate in the opinion of the Commission to protect the public health, safety and welfare." Subsection 4 requires the Commission to consider the adequacy of storm and surface water drainage.
The applicable regulations, in short, required the defendant to evaluate the proposal in terms of the danger it might pose, generally, to the health and safety of the community, and specifically, the risk it creates with respect to flooding. The defendant received conflicting testimony on these questions. As previously noted, the plaintiff presented expert testimony indicating that the proposed five lot subdivision would not create a flood hazard, and that any flooding that occurs off site is a function of the proximity of the properties to the flood plain. Even one of its experts, however, Wilson Alford, Jr., acknowledged that there was a potential for on site flooding which required the use of a special drainage system. The defendant also heard testimony from neighbors who described the flooding that occurs at various times during the year, and the problems they have encountered as a result of recent construction in the mountain area above them.
The question raised by the conflicting testimony is whether the defendant's decision was supported by substantial evidence. "[T]he substantial evidence rule does not call for a roll call of qualified experts, merely that [a]n agency decision must be based on reliable evidence made public and the applicant must have anopportunity to respond to agency concerns." Kaeser v.Conservation Commission, 20 Conn. App. 309, 314 (1989) (Emphasis in original.) A commission "may not base its decision on the special concerns and insights of its members unless it has given the applicant an opportunity to respond to them. Finally, an agency cannot capriciously ignore the testimony of expert witnesses." Strong v. Conservation Commission, 28 Conn. App. 435
(1992).
The defendant was "presented with a debatable question of fact which [was] within the commission's province to resolve."Westport v. Norwalk, supra, 161. Because the defendant fully dislcosed [disclosed] its concerns about the flooding to the plaintiff and its experts and provided the plaintiff with an opportunity to respond to those concerns, this matter is not governed by Feinson v. Conservation Commission, 180 Conn. 421
CT Page 11635 (1980), in which the Commission disregarded the experts' testimony, basing its decision entirely on the specialized knowledge, judgment and concerns of its own members. Although the plaintiff's experts opined that a five lot subdivision would not create a risk of off site flooding, the Commission was not bound to accept that conclusion in view of the countervailing testimony from neighbors describing the on and off site flooding problems they observed over the years. While this is a close call, it cannot be said, after review of the record, that the Commission's decision was not based on substantial evidence and was not an "honest judgment [that] has been reasonably and fairly exercised after a full hearing." Westport v. Norwalk, Id. Accordingly, the plaintiff's appeal is dismissed.
SO ORDERED.
Robert L. Holzberg, J.