[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
NATURE OF ACTION
CT Page 4074-RR
This is an appeal from the denial of an application for special exception by the Meriden Zoning Board of Appeals. The plaintiff is seeking an order from this court that the Meriden Zoning Board of Appeals issue the special exception.
FACTS
The plaintiff, KTR Ltd. Liability Company, is the owner of the premises known as 1320 East Main Street, Meriden, Connecticut. The parcel is approximately 1.4 acres in size and is located in a C3 zone. The applicant sought a special exception for purposes of erecting and operating a car wash facility on the premises pursuant to § 213.20(B)(2) of the Meriden Code.
On April 17, 1995, Luther Miller and Sandra Miller applied for a special exception for the aforementioned reasons. On May 2, 1995 a public hearing was held on the application. An abutting owner, Cary Lowe, who owns and operates a water bottling business on the property to the west of the subject premises, objected both personally and through counsel to the application. These objections concerned the possibility of pollution to the water source which provides Mr. Lowe's bottling operation. After the hearing, the Board voted to dismiss the application without prejudice. The Board gave as its reasons traffic concerns, concerns about the hours of operation, and the environmental safety of the spring water operation in the area. (Record, Exh. 5.)
On August 17, 1995, the plaintiff refilled its application for a special exception. A public hearing was held on September 19, 1995. Following that public hearing, the Board voted three members in favor and two members in opposition. Because four affirmative votes were necessary to grant the exception, the application for the special exception failed and this appeal ensued. At the time of the September 19, 1995 failure of the special exception, no reasons for the denial of the application were given.
AGGRIEVEMENT
The facts clearly demonstrate that the plaintiff was the owner of the affected property both on the day of the application and continuously to the day of the appeal. Accordingly, the plaintiff is statutorily aggrieved.
DISCUSSION
CT Page 4074-SS
The court recognizes that the failure of the Board to give reasons for the decision does not invalidate the Board's decision. It does allow the trial court to search the record to determine whether the Board's decision was supported by the evidence. Parks v. Planning Zoning Commission, 178 Conn. 657,661 (1979); Zieky v. Planning Zoning Commission, 151 Conn. 265,268 (1963).
Although the Board gave no reasons for its September denial, an examination of the record and briefs leads the court to the conclusion that the reasons given on May 2nd when the ZBA denied the plaintiff's application stating "The Board was concerned regarding traffic flow, hours of operation, and the environmental safety of the spring water operation in the area", fairly state the possible reasons which could have prompted the Board's September action.
When the court considers these reasons for denial, certain evidence at the public hearing becomes relevant to a decision of the matter.
At the September 15, 1995 public hearing the plaintiff offered a traffic consultant who concluded that on a typical day the traffic to be added by the proposed use would be "minimal". (Record, Exh. 21, p. 6.) Even under the traffic consultant's worse case scenario, the traffic added by the proposal would be "accommodated satisfactorily" by East Main Street. (Record, Exh. 21, p. 6.) The city's engineering department determined that if certain conditions were met, they "saw no reason to deny the special exception from a traffic engineering standpoint . . ." (Record, Exh. 20.) The plaintiff, through counsel, indicated to the Board that it did not believe there would be any problem in addressing the engineering department's comments. (Record, Exh. 32, p. 6.)
Some concern was expressed about the effect of the proposed car wash on neighborhood property values. The area of East Main Street where the plaintiff's property is located is zoned commercial. There are restaurants, a commercial bakery, banks, the bottling operation, a small strip mall, a major shopping plaza and an automobile dealership, all located within 1000 yards of the plaintiff's property. Given the general commercial nature of the area, it appears improbable that the plaintiff's proposed use would have a detrimental affect upon property value unless it CT Page 4074-TT caused a traffic problem, raised a realistic possibility of pollution, or became a hangout because of unsupervised hours of operation. The plaintiff introduced a written report prepared by GZA Geoenvironmental of Vernon, Connecticut, which concluded "We believe that the proposed car wash development will have no adverse impact on the ground water quality at the Mountain Spring Water Company." (Record, Exh. 23, p. 3.) Plaintiff also introduced a report prepared at Mr. Lowe's request which showed that the well serving Mr. Lowe's bottling operation was drilled to a depth of 600 feet, the first 34 feet of which consisted of 10 inch steel casing. There is also a pump located 160 feet below ground level. (Record, Exh. 22E.)
At the hearing the Chairman of the Board asked whether under flood conditions the experts' conclusions were still valid. A scientist for GZA Geoenvironmental answered the question in the affirmative.
The applicant, at the second hearing, offered to limit the hours of operation and to install monitoring cameras to prevent the car wash from becoming an unwanted gathering place.
It appears to the court that at the September hearing the applicant demonstrated that the proposed car wash would create no traffic problems. The applicant further demonstrated that the hours of operation would create no problems in the neighborhood when limited and monitored as proposed. The serious question of concern to both the neighbors and the Board was the environmental safety of the spring water operation.
At the September hearing the attorney for Mountain Spring Water requested that statements made at the time of the previous application be incorporated into the record. These statements included the opinions of various residents concerning the possibility of pollution. The attorney for Mountain Spring Water stated that the ZBA should be "convinced that the technology that [the plaintiff is] using is not going to affect [Lowe's] well." Mr. Lowe testified that "1/8 of an ounce of carburetor cleaner will pollute 1,000,000 gallons of water if someone comes under that car and drops that stuff we get big flood in back and that brook, those pipes, don't go through the atrium and you're plumbing the whole aquifer in my area." Resident John Reardon spoke about the impact of the car wash on the nearby brook. Resident Ray Weckworth stated "I just can't imagine anybody trying to put a car wash next to a well. . . . I don't see how CT Page 4074-UU [the plaintiff] can guarantee that water won't soak into the ground and contaminate the well. . . . I just don't think it's practical when you've got a beautiful well like you've got and to contaminate it for the sake of a couple of people. It just doesn't make any sense." (Record, Exh. 8, at 2021.) Resident Francis R. Rotella stated "Water is a very precious commodity, especially spring water. . . . Putting a car wash in, there's no guarantee. . . . This is a disaster. It's a disaster waiting to happen. . . . The possibility of contamination of well water or brook water or anything." (Record, Exh. 8 at 2224.)
It is the opinion of the court that the instant case turns on whether or not there is sufficient evidence to validate the two negative votes. That evidence must be sufficient to show that fears of well pollution are reasonably founded.
As the Supreme Court stated in Feinson v. ConservationCommission, 180 Conn. 421 (1980):
 The appeal on the merits turns on whether there was sufficient evidence on the record as a whole to support the decision of the commission. The record consists of the plaintiffs applications and the report of the plaintiff's expert witness, the interrogation of the expert witness at the public hearing, the discussion at the public hearing, and the knowledge of the individual commission members. . . (at 425)
In Feinson, the denial was prompted by the concern articulated by a member of the commission that there was "extreme possibility of septic failure, constituting a public health hazard, with introduction of septic effluent into surface waters." (at 42627) The Court went on to hold:
 The question before us is whether, on a subject as technically sophisticated and complex as pollution control, commissioners who have not been shown to possess expertise in this area may rely on their own knowledge, without more, in deciding to deny a license to conduct a regulated activity. We agree with the conclusion of the trial court that this record does not disclose sufficient reliable evidence to sustain the action taken by the defendant commission." (at 427)
Finally, the Feinson Court held:
. . . We are compelled to conclude that a lay commission CT Page 4074-VV acts without substantial evidence and arbitrarily when it relies on its own knowledge and expertise concerning technically complex issues such as pollution control, in disregard of complex expert testimony, without affording a timely opportunity for rebuttal of its point of view. (at 429)
It appears to the court that commission members in the instant case, and certainly the public, expressed fears concerning potential pollution. However, the expert testimony was unequivocal and undisputed that such pollution was not likely to occur. The fears expressed were more in the nature of what the tragedy would be if pollution occurred rather than any evidence to support the probability or even possibility of such pollution. Under these circumstances the court holds that the action of the commission should be set aside and the plaintiff's appeal sustained. The court therefore orders the Meriden Zoning Board of Appeals to issue the special exception to operate the car wash.