[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from the decision of the Inland Wetlands Agency of the Town of Coventry ("IWA") denying an application to conduct a regulated activity in the buffer zone to a designated watercourse, the Willimantic River, made by the applicant, Herman CT Page 3917 M. Frechette ("plaintiff" or "applicant"). The IWA, the defendant, is the designated municipal commission authorized to enforce the Inland Wetlands and Watercourses Act, General Statutes §§ 22a-36 to22a-45, and the wetlands and watercourses regulations of the town of Coventry.
FACTUAL PROCEDURAL HISTORY
On January 2, 1995, the plaintiff applied for permission from the IWA to commence a six-step construction project on a piece of land located entirely within a regulated area, namely within the 150-foot "buffer zone" to the Willimantic River, a designated watercourse. The six-step project consisted of the following: (1) installation of a footing drain; (2) construction of a concrete retaining wall; (3) construction of a single-family dwelling; (4) construction of a driveway; (5) installation of a septic system; and (6) grading for the house, driveway and septic system. To prevent erosion, the plaintiff proposed the erection of a staked silt fence.
On November 29, 1995, the IWA held a hearing on and ultimately denied the plaintiff's application for construction within the regulated area. At the hearing, the plaintiff was represented by counsel who was accompanied by the proposed project's engineer, Peter Henry, of Holmes Henry. The IWA published notice of its decision on December 14, 1995, in The Willimantic Chronicle.
On December 28, 1995, the plaintiff filed a complaint in the Superior Court, judicial district of Tolland at Rockville, appealing the decision of the IWA. The IWA filed an answer February 23, 1996. Pursuant to General Statutes § 22a-43, the IWA submitted the return of record on February 23, 1996, and a supplemental return of record on March 21, 1996. The plaintiff filed a brief on September 18, 1996. The IWA followed with its own brief on December 17, 1996.
The questions raised by the plaintiff in this appeal are: (1) whether the IWA acted arbitrarily in ignoring the expert testimony presented that explained that the proposed septic system would have no adverse effect on the watercourse; (2) whether the IWA misapplied the law, General Statutes § 22a-42a(f),[1] by denying the plaintiff's application on the basis that the proposed construction may adversely affect the buffer zone, though not the actual watercourse; and (3) whether the decision constituted a "taking" and therefore whether the plaintiff is entitled to CT Page 3918 compensation.
JURISDICTION
"Appeals to courts from administrative agencies exist only under statutory authority." (Brackets omitted; citation omitted; internal quotation marks omitted.) Killingly v. Connecticut SitingCouncil, 220 Conn. 516, 521, 600 A.2d 752 (1991). "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it was created." CitizensAgainst Pollution Northwest, Inc. v. Connecticut Siting Council,217 Conn. 143, 152, 584 A.2d 1183 (1991). "[F]ailure to comply strictly with the statutory provisions by which a statutory right to appeal is created will subject an appeal to dismissal."Killingly v. Connecticut Siting Council, supra, 220 Conn. 522. This court has jurisdiction to hear this appeal pursuant to General Statutes § 22a-43.
AGGRIEVEMENT
"The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision. Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected. A person does not become aggrieved, however, until the agency has acted." (Citations omitted; internal quotation marks omitted.)Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 530,525 A.2d 940 (1989).
The plaintiff had a contract to buy the property in question, and was authorized to bring a permit application before the Zoning Board of Appeals. The court finds that the plaintiff is an aggrieved party.
TIMELINESS
In order to take advantage of a statutory right to appeal from a decision of an administrative agency, there must be strict CT Page 3919 compliance with the statutory provisions which created the right.Simko v. Zoning Board of Appeals, 206 Conn. 374, 377, 538 A.2d 202
(1988). These provisions are mandatory and jurisdictional; failure to comply subjects the appeal to dismissal. Capalbo v. PlanningZoning Board of Appeals, 208 Conn. 480, 485, 547 A.2d 528 (1988). Thus, where an appeal is filed after the statutory appeal period has expired, the trial court lacks subject matter jurisdiction over the appeal. Upjohn Co. v. Zoning Board of Appeals, 224 Conn. 96,102, 616 A.2d 793 (1992).
General Statutes § 8-8(b) governs the timeliness of an appeal of any decision of a local inland wetlands agency. See General Statutes § 22a-43(a). General Statutes § 8-8(b) provides that "any person aggrieved by any decision of a board may take an appeal . . . within fifteen days from the date that notice of the decision was published . . . ."
The IWA's decision denying the plaintiff permission to commence construction in the buffer zone was published on December 14, 1995. The plaintiff filed this complaint on December 28, 1995, within the fifteen day limitations period. The appeal is thus timely.
STANDARD OF REVIEW
"A reviewing court is required to search the record for reasons; it is not required to articulate them." Kaeser v.Conservation Commission, 20 Conn. App. 309, 312, 567 A.2d 383
(1989). "The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons as given. The evidence, however, to support any such reason must be substantial; the credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency." (Citations omitted; emphasis added; internal quotation marks omitted.) Huck v. Inland Wetlands Watercourses Agency, supra, 203 Conn. 540.
"The substantial evidence rule is a compromise between opposing theories of broad or de novo review and restricted review or complete abstention. It is broad enough and capable of sufficient flexibility in its application to enable the reviewing court to correct whatever ascertainable abuses may arise in administrative adjudication. On the other hand, it is review of such breadth as is entirely consistent with effective administration . . . it imposes an important limitation on the CT Page 3920 power of the court to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of `weight of the evidence' or `clearly erroneous action.'" (Brackets omitted; citations omitted; internal quotation marks omitted.) Id., 541. "The reviewing court must take into account that there is contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Id., 546.
Under Connecticut law "[w]hen agency action is overturned . . . because of invalid or insufficient findings . . . a court must ordinarily remand the matter under consideration to the agency for further consideration." Feinson v. Conservation Commission,180 Conn. 421, 429-30, 429 A.2d 910 (1980). "When it appears, however, that the [agency] could reasonably reach only one conclusion, the court may direct the [agency] to do that which the conclusion requires." Chevron Oil Co. v. Zoning Board of Appeals,170 Conn. 146, 153, 365 A.2d 387 (1976).
DISCUSSION
General Statutes § 22a-41(a) provides: "In carrying out the purposes and policies of sections 22a-36 to 22a-45, inclusive, including matters relating to regulating, licensing and enforcing of the provisions thereof, the commissioner shall take into consideration all relevant facts and circumstances, including but not limited to:" (1) the environmental impact of the proposed activity on inland wetlands or watercourses; (2) the alternatives to the proposed action; (3) the relationship between short-term uses of the environment and the maintenance and enhancement of long-term productivity; (4) irreversible and irretrievable commitments of resources which would be involved in the proposed activity; (5) the extent of injury to, or interference with, the property caused or threatened by the proposed activity; and (6) the impact of the regulated activity outside of the area for which it is proposed. See General Statutes § 22a-41(a). See also Wetlands and Watercourses Regulations, Town of Coventry, § 5.1.
At the hearing before the IWA, the plaintiff presented the opinions of two experts, who both believed the proposed septic system would have no adverse effect on the watercourse. Robert L. Miller, Director of Health of the Town of Coventry, asserted that the proposed septic system will have no adverse effect on the CT Page 3921 regulated areas. A soil scientist consulted by the plaintiff, John P. Ianni, also noted that the septic system would have no impact on this watercourse.
The plaintiff did not, however, present any evidence that the entire six-step proposed project would have no impact on the wetlands or watercourse.
"[A]n administrative agency is not required to believe any witness, even an expert, nor is it required to use in any particular fashion any of the materials presented to it so long as the conduct of the hearing is fundamentally fair." Huck v. InlandWetlands Watercourses Agency, supra, 203 Conn. 542. See alsoManor Development Corporation v. Conservation Commission,180 Conn. 692, 697, 433 A.2d 999 (1980).
The IWA, therefore, did not exceed its authority simply by disregarding the expert evidence, which addressed only the impact of the septic system on the wetlands or watercourse and did not address the impact of the other proposed construction on the wetlands or watercourse.
The plaintiff further contends that the IWA, in rendering its decision, speculated on the impact of the proposed construction on the buffer zone, rather than on considering the possible adverse effects of the proposed activity on the watercourse. The plaintiff asserts that by focusing on the buffer zone, not the watercourse, the IWA violated the provisions of General Statutes § 22a-42a(f).
Based on a review of the complete record, the court finds that the IWA did consider the impact of the proposed construction on the watercourse itself, not just the buffer zone property, though the decision of the IWA does not provide the reasons for the denial of the plaintiff's application. The Commission's failure to articulate reasons for the denial of the plaintiff's application is not, however, determinative. Concerns were expressed that overdevelopment in the buffer zone would adversely affect the river itself, in part due to the stripping away of vegetation and possible erosion in the area. During the hearing, there was also a discussion of the construction of a clay barrier wall to minimize any adverse effect erosion may have on the river and the impact of the use of fill on the property. Concerns were also raised as to the effect of the proposed construction on the University of Connecticut wells across the river. Indeed, the motion to deny the application was raised immediately after a discussion of the CT Page 3922 proximity of the University of Connecticut wells and the location of another subdivision across the river. These discussions during the hearing were directed primarily to the adverse effects of the proposed construction on the watercourse, not merely to the adverse effects on the buffer zone. Additionally, the court finds that any consideration of the effects of the proposed construction on land outside of the wetland, e.g., the University of Connecticut wells on the other side of the river, falls reasonably within the factors outlined by General Statutes § 22a-41(a)(6), and Wetlands and Watercourses Regulations, Town of Coventry, § 5.1(I).[2]
Although the IWA properly considered the potential adverse impact of the proposed activity on the watercourse, it is not apparent from the record that the IWA's decision was supported by substantial evidence. In light of the lack of any expert testimony presented at the hearing in support of, or contrary to, the concerns raised by the IWA, it appears that the concerns expressed by the IWA were based on personal knowledge and observations. As a general rule, "[k]knowledge obtained through personal observations of the locus may properly be considered by the agency in arriving at reasons given for its denial." Huck v. Inland Wetlands Watercourses Agency, supra, 203 Conn. 547.
The permissible use of personal observations is limited, however. "[A] lay commission acts without substantial evidence, and arbitrarily, when it relies on its own knowledge and experience concerning technically complex issues . . . in disregard of contrary expert testimony, without affording a timely opportunity for rebuttal of its point of view." Feinson v. ConservationCommission, supra, 180 Conn. 429. The determination of what constitutes an adverse impact on wetlands or watercourses is considered to be a technically complex issue. See Tanner v.Conservation Commission, 15 Conn. App. 336, 341, 544 A.2d 258
(1988).
In the present case, there was no expert testimony contradicting the personal observations of the IWA members as to the potential adverse effects of the proposed construction project as a whole, except as to the lack of any potential adverse effect of the septic system alone on the watercourse. Nevertheless, expert testimony is not the only acceptable substantial evidence in technically complex matters. Personal observations and knowledge of the agency's members may be relied upon as long as the personal knowledge or expertise of the agency members is made public and the agency proceedings are conducted with fundamental fairness, that is CT Page 3923 "the applicant must have an opportunity to respond to agency concerns." Kaeser v. Conservation Commission, supra,20 Conn. App. 314, citing Feinson v. Conservation Commission, supra,180 Conn. 428-29.[3]
The present case resembles Feinson v. Conservation Commission,
supra, 180 Conn. 428, in which the court found that, "[n]owhere in the public hearing, or at any other time and place, was the plaintiff afforded a fair opportunity to hear the commission's fears and to attempt to allay them . . . ." A review of the transcript of the hearing indicates that IWA members engaged in aninformal discussion amongst themselves and with the engineer for the plaintiff's proposed project regarding the IWA'S concerns over the impact of the proposed project. The IWA, however, did not question the plaintiff's engineer extensively about all aspects of the proposed construction project. See, e.g., Kaeser v.Conservation Commission, supra, 20 Conn. App. 314-15, where the court noted the importance of the agency's extensive questioning of the plaintiff's engineer. Counsel for plaintiff interjected on occasion, but was never given the opportunity to speak freely in order to allay the IWA'S concerns. See, e.g., Kaeser v.Conservation Commission, supra, 20 Conn. App. 314-15 where counsel for plaintiff was "invited" to present rebuttal testimony. Nor were the experts consulted by the plaintiff in attendance at the hearing, thus they could not rebut the IWA's concerns.
Based on the reasoning and standard set forth in Feinson v.Conservation Commission, supra, 180 Conn. 428, the court finds that the IWA's decision was not based on substantial evidence. Nevertheless, because it does not appear as a matter of law that there is only one single conclusion that the commission could reasonably reach, a direct order to the commission is not legally warranted. Id., 430. Accordingly, the matter is remanded to the IWA to give the plaintiff a full and fair opportunity to present evidence and argument regarding the impact of this project on the wetlands and watercourse and for such other evidence as the IWA may require.
Bishop, J.