[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from the decision of the Inland Wetlands and Watercourses Agency of the Town of Greenwich (Wetlands Agency), denying the plaintiff's application for a permit to construct a single-family residence. The plaintiff, Conyers Farm, is the owner of a 14.041 acre parcel of land located on Lower Cross Road in Greenwich, Connecticut. On November 18, 1994, the plaintiff submitted an application to the Wetlands Agency for a permit to conduct regulated activities in a wetlands area. CT Page 8058 (Return of Record [ROR], Item 7: Wetlands Application). In the development plan submitted by the plaintiff, the residence would be located in the southern most portion of the plaintiff's "L-shaped" property. Locating the residence in the southern portion of the lot would require a lengthy driveway and result in two wetland crossings. (ROR, Item 63: Denial Map No. 95-2).
On May 8, 1995, and again on July 10, 1995, the Wetlands Agency held public hearings to consider the plaintiff's application. (ROR, Items 32 and 54: Transcript of Public Hearings). At the July 10, 1995 public hearing, the plaintiff was given an opportunity to comment on an alternative proposal prepared by Matthew Popp, an alternate member of the agency and a certified landscape architect. (Supplemental ROR, Item 1: Popp Alternative). The Wetlands Agency then voted to deny the plaintiff's application at its August 7, 1995 meeting. (ROR, Item 76: August 7, 1995 Minutes). The members of the Wetlands Agency "reached a consensus that the application should be denied primarily because there was a feasible and prudent alternative." (ROR, Item 76). In denying the plaintiff's application for a permit, the agency gave the following reasons: (1) The adverse environmental impacts associated with the proposed development have not been minimized; (2) There was at least one feasible and prudent alternative; (3) Because of the steep slopes, presence of high quality wetland, and transitional wetland buffers near the proposed house site, more than the agency's minimum guideline setbacks would be necessary; (4) The proposed development would allow residential construction and living activities to intrude into a portion of the lot that was not considered for residential development by the agency when it issued its conceptual approval of the Conyers Farm subdivision; (5) Mitigation proposed to offset impacts associated with the residential development including two driveway crossings was not related to wetland areas impacted; (6) Limiting development to the northern and north-central portions of the lot would ensure protection of a significant inland wetland and watercourse corridor that links with adjacent publicly owned open space and is a tributary to the Town's drinking water supply; (7) The proposed activities are regulated activities that could have a significant impact on significant inland wetland and watercourse corridors; (8) Further actions could be taken to minimize adverse environmental impacts associated with the proposed regulated activities; (9) Residential development is possible on other sections of this lot. (ROR, Item 57: Statement of Decision). Notice of the agency's decision was published on August 19, 1995. (ROR, Item CT Page 8059 59: Legal Notice of Decision).
The plaintiff commenced a timely appeal, pursuant to General Statutes § 22a-43, by service of process upon the chairman of the Wetlands Agency and the town clerk on September 1, 1995. In its appeal from the decision of the Wetlands Agency, the plaintiff alleges that the agency acted illegally, arbitrarily and in abuse of its discretion in that there are no feasible and prudent alternatives to the plaintiff's proposal and the agency's decision amounts to a taking without just compensation. (Plaintiff's Appeal, ¶ 27). The plaintiff now seeks an order from the court directing the Wetlands Agency to grant the plaintiff's application.
At a hearing before the court on March 21, 1997, the plaintiff presented evidence that Conyers Farm is the owner of the property known as lot 3 and located on Lower Cross Road in Greenwich, Connecticut. (Plaintiff's Exhibit 1: Deed). General Statutes § 22a-43 (a) provides in pertinent part: "[A]ny person aggrieved by any . . . decision or action made pursuant to sections 22a-36 to 22a-45, inclusive, by the commissioner, district or municipality . . . may, within the time specified in subsection (b) of section 8-8 from the publication of such . . . decision or action, appeal to the superior court . . . ." As the owner of the property that was the subject of the Wetlands Agency's decision, Conyers Farm is aggrieved within the meaning of § 22a-43 (a). See Huck v. Inland Wetlands WatercoursesAgency, 203 Conn. 525, 530, 525 A.2d 940 (1987).
In addition, by agreement of the parties, the court viewed a videotape of the premises. (Exhibit #2).
The environmental authority of a local inland wetlands agency "is limited to the wetland and watercourse area that is subject to their jurisdiction." Connecticut Fund for the Environment,Inc. v. Stamford, 192 Conn. 247, 250, 470 A.2d 1214 (1984). "In reviewing an inland wetlands agency decision . . ., the reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial . . . . [E]vidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Internal quotation marks omitted; emphasis added.) Samperi v.Inland Wetlands Agency, 226 Conn. 579, 587-88, 628 A.2d 1286
CT Page 8060 (1993). "In challenging an administrative agency action, the plaintiff has the burden of proof." Id., 587. "[T]he plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision." Id.
The plaintiff argues that the record does not contain substantial evidence to support the Wetland Agency's conclusion that a "feasible and prudent" alternative to the plaintiff's proposal exists. According to the plaintiff, the documentary evidence and uncontroverted testimony of the plaintiff's experts establish that the plaintiff's proposal is the only suitable location for construction of a residence on the subject property. In the absence of contradictory evidence, the plaintiff argues that the defendant agency could not ignore the uncontroverted expert testimony presented by the plaintiff. In addition, the plaintiff contends that the real basis for the Wetlands Agency's decision was its desire to enhance the town's public open space by prohibiting development of the plaintiff's property in the area adjacent to the Babcock Preserve. The plaintiff argues that such a consideration is inappropriate because the Wetland's Agency's authority is limited to the wetland and watercourse areas that are the subject of the agency's jurisdiction. Accordingly, the plaintiff claims that their appeal should be sustained.
The defendant argues that there is substantial evidence in the record to support the Wetlands Agency's decision. According to the defendant, the plaintiff failed to properly address the issue of feasible and prudent alternatives, and the Wetlands Agency properly found that there was at least one feasible and prudent alternative which would reduce the length of the proposed driveway, eliminate the second wetland crossing, and provided for residential development in an area with less steep slopes and adjacent to less significant wetlands. In addition, the defendant claims that the Wetlands Agency properly found a number of potentially adverse environmental impacts, including the possible degradation of the water quality in the adjacent drinking water supply, that could be avoided by limiting development to the northern or central portion of the property. Under these circumstances, the defendant argues that the Wetlands Agency was obligated by statute to find that the plaintiff failed to establish that a feasible and prudent alternative did not exist and the agency was forced to deny the plaintiff's application.
Where a local inland wetlands agency has considered an CT Page 8061 application for a wetlands permit at a public hearing, "a permit shall not be issued unless the commissioner finds on the basis of the record that a feasible and prudent alternative does not exist. . . . The finding and the reasons therefor shall be stated on the record in writing." § 22a-41 (b). In interpreting the phrase "feasible and prudent alternative," the Connecticut Supreme Court held that "for a wetlands permit to issue, the local inland wetlands agency must determine that the alternative presented by the applicant is not only sound from an engineeringstandpoint but is also economically reasonable in light of the social benefits derived from the activity." (Emphasis added.)Samperi v. Inland Wetlands Agency, supra, 226 Conn. 595. "The applicant, accordingly, must demonstrate to the local inland wetlands agency that its proposed development plan, insofar as it intrudes upon the wetlands, is the only alternative that is both feasible and prudent." Id., 593.
The issue on appeal is whether there is substantial evidence in the record to support the decision of the Wetlands Agency. The plaintiff presented documentary evidence as well as the testimony of expert witnesses in support of its application. Testifying at the public hearing on behalf of the plaintiff were: (1) Jay Fain, a certified soil scientist; (2) Robert Oley, a professional engineer and registered sanitarian; (3) Christopher Allan, a registered sanitarian and certified erosion and sediment control specialist; and (4) Robert Jontos, a registered sanitarian. These were the only expert witnesses who offered evidence at the hearing, and there was no testimony in opposition to the plaintiff's application. In fact, attorney Roger Pearson the attorney for the abutting neighbors urged approval of the plaintiff's application and rejection of the alternatives suggested.
Jay Fain testified as to the impacts on wetlands and gave an overview of the project and an analysis of the alternatives to the plaintiff's proposal. Fain testified that the driveway was designed to minimize the impact to the wetlands in that the first wetland crossing is at the narrowest point of the wetland and the second is at an existing crossing which has a stone culvert. (ROR, Item 32: Transcript of May 8, 1995 Public Hearing, pp. 28-29). Fain also testified that the only suitable location for the septic system was in the southern portion of the lot. (ROR, Item 32, pp. 26-27). The location of the septic system then determined the location of the residence. According to Mr. Fain, locating the house anywhere else would require digging up the wetland, an CT Page 8062 impact which the plaintiff's proposal would avoid, to install a force main through the wetland to connect the septic system to the residence. (ROR, Item 32, pp. 45-46). In addition, Fain testified that an access road to service the septic system in the south would still be necessary, and that if the force main should ever fail, the effluent would ultimately end up in the drinking water supply. (ROR, Item 76, pp. 104, 76). Mr. Fain concluded that the plaintiff's proposal was the alternative with the least amount of impact on the site. (ROR, Item 32, p. 104).
Robert Oley testified regarding what is feasible and prudent in terms of the septic system. According to Oley, the only area on the site suitable for a septic system under the state health code requirements is in the most southern portion of the lot. (ROR, Item 32, pp. 55-56, 66).
Christopher Allan testified as to the buffers and sediment and erosion controls. Allan testified that by placing the residence and septic system in the southern portion of the lot, the plaintiff is able to meet or exceed all setback requirements established by the Wetlands Agency. (ROR, Item 32, p. 92). In addition, by placing the residence in any other location, Allan claimed that the plaintiff would not be able to maximize the setbacks and maintain the same buffers. (ROR, Item 32, p. 92).
Upon a review of the record, it is submitted that the Wetlands Agency's decision is not supported by substantial evidence. The agency denied the plaintiff's application "primarily because there was a feasible and prudent alternative" that could further reduce or avoid significant and adverse impacts on wetlands and watercourses located on the lot. (ROR, Item 76). In reaching this conclusion, the agency relied on the proposal submitted by Matthew Popp as an example of one of these alternatives. Nevertheless, the record does not contain substantial evidence to establish that the so called "Popp alternative" was "feasible," i.e., sound from an engineering standpoint, and "prudent" in that it was economically reasonable in light of the social benefits derived from the activity.
As the chairman of the Wetlands Agency acknowledged, the Popp alternative "was an informal map . . . sketched with an idea of helping" the applicant and was nothing more than a "suggestion." (ROR, Item 54: Transcript of July 10, 1995 Public Hearing, pp. 16, 66). Furthermore, Robert Jontos testified at the July 10, 1995 public hearing that the septic system that would be required CT Page 8063 by the Popp alternative would be much more complex and would require additional long term maintenance. (ROR, Item 54, pp. 32-33). Finally, Jay Fain testified that the Popp alternative is not a feasible and prudent alternative because it would have a greater impact on the wetlands. (ROR, Item 54, pp. 37-38). According to Fain, the plaintiff's proposal is superior in terms of maintaining the setbacks from wetlands, and the Popp alternative would have an additional impact on the wetlands because it requires an additional wetland crossing in order to install the septic force main. (ROR, Item 54, pp. 38, 49). Under these circumstances, the record does not contain substantial evidence to support the agency's conclusions that a feasible and prudent alternative exists.
The Wetlands Agency also concluded that the location proposed for the residence was in one of the most difficult areas in the lot to develop "because of the steep slopes, presence of ledge and nearness to a high quality wetland." (ROR, Item 76). Given the slopes and the high quality of adjacent wetland, the agency was convinced that its minimum guideline setback of 50 feet was not adequate and the proposed buffers were inadequate to protect the wetlands and watercourses. (ROR, Item 76).
A review of the record indicates that the above conclusions are not supported by substantial evidence in the record. "[A]n administrative agency must base its decision on substantial reliable evidence in the record. It may not base its decision on the special concerns and insights of its members unless it has given the applicant an opportunity to respond to them. Finally, an agency cannot capriciously ignore the testimony of expert witnesses." Strong v. Conservation Commission, 28 Conn. App. 435,441, 611 A.2d 427 (1992).
In the present case, all of the experts were in agreement that the development plan proposed by the plaintiff was the alternative with the least impact on the wetlands. Thus, the agency impliedly rejected the only expert evidence that was offered and relied on its own knowledge and experience. "[A] lay commission acts without substantial evidence, and arbitrarily, when it relies on its own knowledge and experience concerning technically complex issues such as pollution control, in disregard of contrary expert testimony, without affording a timely opportunity for rebuttal of its point of view." Feinson v.Conservation Commission, 180 Conn. 421, 429, 429 A.2d 910 (1980). Under these circumstances, the defendant agency's decision is not CT Page 8064 supported by substantial evidence in the record. Accordingly, the plaintiff's appeal from the decision of the Wetlands Agency is sustained.
Furthermore, "[w]hen it appears . . . that the [agency] could reasonably reach only one conclusion, the court may direct the [agency] to do that which the conclusion requires," Chevron OilCo. v. Zoning Board of Appeals, 170 Conn. 146, 153, 365 A.2d 387
(1976). In the present case, the evidence in the record indicates that the plaintiff's proposal is the alternative with the least impact on wetlands and that it is the only feasible and prudent alternative. Therefore, the granting of the plaintiff's permit is the only conclusion that the Wetlands Agency can reasonably reach. Accordingly, this case is remanded to the Wetlands Agency with instructions to grant the inland wetlands permit sought by the plaintiff.
KARAZIN, J.