## DENNIS BRADLEY *v.* INLAND WETLANDS AGENCY OF THE CITY OF WEST HAVEN
### (10473)

O'CONNELL, FOTI and LAVERY, Js.

Argued April 6—decision released June 23, 1992

*Kathleen S. Mass,* with whom, on the brief, was *Vincent R. Falcone,* for the appellant (plaintiff).

*Charles A. Graham,* corporation counsel, with whom, on the brief, was *Henry C. Szadkowski,* for the appellee (defendant).

LAVERY, J. This appeal involves the defendant's denial of the plaintiff's construction permit application.[1] The defendant had approved a previous permit application made by the plaintiff, and that permit expired because the plaintiff failed to initiate activity on the parcel within one year. The plaintiff claims that the trial court improperly failed to sustain his appeal because (1) the applications were identical and there had been no change of conditions or other considerations that had intervened that materially affected the merits of the application, and (2) he provided uncontradicted expert testimony that there would be minimal, if any, adverse impact on the inland wetlands and the defendant did not have any substantial evidence on which to base its denial.

The pertinent facts are as follows. On March 14, 1988, the defendant granted the plaintiff's permit to build a single-family residence on a parcel of land adjacent to West Main Street in West Haven. The permit expired one year later on March 14, 1989, because the plaintiff failed to initiate activity within one year as required by the defendant's regulations.[2]

On June 21, 1989, the plaintiff again applied for a construction permit. At its meeting on September 11, 1989, the defendant continued the application to October 10, requesting that the plaintiff provide additional information. In particular, the defendant requested that the plaintiff submit (1) a written report on the amount

---

[1] The plaintiff in this action is Dennis Bradley. The defendant is the inland wetlands and watercourses agency of the city of West Haven.

[2] The defendant's regulations provide in part: "Section 7.2. — Initiation of activity under a permit shall be within one (1) year of the granting of the permit, unless the time period is extended by the Commission."

and use of fill, (2) a hydrological study evaluating the pipe on abutting property, and (3) a written report addressing the increased flow from the gutters of the proposed construction, including the ability of the pipe to handle the flow.

At the October 10 meeting, the plaintiff claimed that his application should be approved because nothing had changed concerning the property since the defendant approved the original application. One of the defendant's members, however, stated that, in the course of examining applications regarding other parcels, the defendant had become aware of severe problems downstream that it was not aware of when the original application was approved in 1988. One of these problems was that water was running across West Main Street into Cove Brook. These problems caused the defendant to review the plaintiff's second application more closely than it had the first. The plaintiff's proposed structure was to be built on a slab, with the foundation higher than the surrounding property, causing water to run off onto adjacent property. The defendant denied the application because the plaintiff did not provide all of the information requested at the September 11 meeting.

In November, 1990, the plaintiff again reapplied, filing an application identical to those filed in March, 1988, and June, 1989. The defendant denied this third application on January 8, 1991. The plaintiff's subsequent appeal to the Superior Court was dismissed.

"Administrative agencies are impotent to reverse [themselves] unless (1) a change of condition has occurred since its prior decision or (2) other considerations materially affecting the merits of the subject matter have intervened and no vested rights have arisen. *Middlesex Theatre, Inc.* v. *Hickey,* 128 Conn. 20, 22, 20 A.2d 412 [1941]. *Hoffman* v. *Kelly,* 138 Conn.

614, 616–17, 88 A.2d 382 (1952). The principle applies, however, only when the subsequent application seeks substantially the same relief as that sought in the former. *Fiorilla* v. *Zoning Board of Appeals,* 144 Conn. 275, 279, 129 A.2d 619 (1957). *Grillo* v. *Zoning Board of Appeals,* 206 Conn. 362, 367, 537 A.2d 1030 (1988)." (Internal quotation marks omitted.) *Carlson* v. *Fisher,* 18 Conn. App. 488, 497–98, 558 A.2d 1029 (1989).

It is unnecessary for this court to determine whether the 1988 and 1989 applications sought the same relief. The determination as to whether the application under review is substantially the same as the prior application and that circumstances and conditions have not changed so as to affect materially the merits of the application is for the defendant to determine in the first instance. *Hotchkiss Grove Assn., Inc.* v. *Water Resources Commission,* 161 Conn. 50, 58, 282 A.2d 890 (1971). The plaintiff bears the burden of proof to show that there was no change of conditions or circumstances since the prior application. *Grillo* v. *Zoning Board of Appeals,* supra, 368. The minutes of both the September 11 and the October 10, 1989 meetings clearly show that new information had come to the defendant since the granting of the plaintiff's original application in 1988. The defendant was made aware of flooding problems in the area of the plaintiff's property. The record shows that the defendant decided that considerations materially affecting the merits of the application had intervened and no vested rights had arisen. We conclude that there was substantial evidence in the record to show the change in circumstances and that the defendant made the plaintiff aware of its concerns.

We hold, on the basis of the foregoing considerations and the record before us, that the defendant acted properly in considering factors that came to light between the 1988 hearing and approval and the subsequent hear-

ings and denials, and that the plaintiff did not meet his burden of proof that there were no changed conditions and that any vested rights had arisen.

The plaintiff's second claim is that he provided uncontradicted expert testimony that there would be minimal, if any, adverse impact on the inland wetlands and that the defendant did not have any substantial evidence to support the denial of his permit. "Appellate review of an agency's decision is of limited scope. The reviewing court does not make a broad, de novo review of the record. *Huck* v. *Inland Wetlands & Watercourses Agency,* 203 Conn. 525, 541, 525 A.2d 940 (1987). It does not redetermine factual issues or weigh the credibility of witnesses, as those matters are within the exclusive province of the agency. Id., 540–42. The court is limited to a review of the evidence and reasoning the agency has placed on the record. Agency decisions must be sustained if the record reveals substantial evidence in support of any reason given. Id., 539–40." *Kaeser* v. *Conservation Commission,* 20 Conn. App. 309, 311, 567 A.2d 383 (1989).[3]

---

[3] "This so-called substantial evidence rule is similar to the 'sufficiency of the evidence' standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. . . . [It] is a compromise between opposing theories of broad or de novo review and restricted review or complete abstention. It is broad enough and capable of sufficient flexibility in its application to enable the reviewing court to correct whatever ascertainable abuses may arise in administrative adjudication. On the other hand, it is review of such breadth as is entirely consistent with effective administration. . . . [It] imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of 'weight of the evidence' or 'clearly erroneous' action . . . it is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." (Citations omitted; internal quotation marks omitted.) *Huck* v. *Inland Wetlands & Watercourses Agency,* 203 Conn. 525, 541, 525 A.2d 940 (1987).

The plaintiff relies on the rule set out in *Feinson* v. *Conservation Commission,* 180 Conn. 421, 429, 429 A.2d 910 (1980), in which the court held that in matters of technical complexity, such as pollution control, a lay commission without expertise in the area may not substitute its own judgment for contrary expert testimony. To do so without making public the basis of its decision and without offering the applicant an opportunity for rebuttal is to act arbitrarily and without fundamental fairness. Id., 428–29. In *Feinson,* the plaintiff's engineer was the only witness questioned on the construction plan. Id., 423. There was no evidence to the contrary introduced either by an expert or a lay witness, but a lay commissioner did express a contrary opinion. Id., 426–27. The commission in *Feinson* denied the plaintiff's permit application even though the commission evinced general satisfaction with the evidence that the plaintiff presented. Id., 428. The plaintiff's appeal in *Feinson* was upheld because he was given no warning that his evidence would be entirely discredited and was denied an opportunity for rebuttal. Id.

The plaintiff argues that he produced evidence through his experts Virginia Burkhardt, an ecologist, and N.A. Esposito, an engineer, that there would be minimal, if any, adverse impact on the inland wetlands and that there was no substantial evidence to support the defendant's denial of the permit.

In evaluating whether the conclusions reached meet the substantial evidence standards, the credibility of witnesses is a matter within the province of the administrative agency. *Huck* v. *Inland Wetlands & Watercourses Agency,* supra, 540–41. "An administrative agency is not required to believe any witness, even an expert." Id., 542; *Manor Development Corporation* v. *Conservation Commission,* 180 Conn. 692, 697, 433 A.2d 999 (1980); *Jaffe* v. *State Department of Health,* 135 Conn. 339, 351, 64 A.2d 330 (1949). The agency

is not required to use the evidence and materials presented to it in any particular fashion, as long as the conduct of the hearing is fundamentally fair. *Huck* v. *Inland Wetlands & Watercourses Agency,* supra; *Manor Development Corporation* v. *Conservation Commission,* supra. It cannot, however, completely disregard the documentary evidence before it. *Johnson* v. *Zoning Board of Appeals,* 156 Conn. 622, 624, 238 A.2d 413 (1968). The agency cannot disregard the only expert evidence on the issue when agency members lack their own expertise or knowledge; *Tanner* v. *Conservation Commission,* 15 Conn. App. 336, 341, 544 A.2d 258 (1988); but clearly, non-experts may offer reliable and substantial evidence. *Kaeser* v. *Conservation Commission,* supra, 315–16.

The difference between this case and *Feinson* is great. In *Feinson,* there was only one witness, the plaintiff's expert. In that case, there was no contrary evidence other than the opinion of a lay member of the board. In this case, the defendant had prior reports on the previous application that are part of the file and were exhibits at the hearing before the defendant of which the plaintiff was aware. The Eco Science Laboratory report[4] concluded that "the subject lot is entirely wetland except for a fringe at some edges where dumpings of brush, trash and soil has raised the elevation by a foot or more. . . . The subject wetland is not less valuable or less important because it is found in a fully developed residential area; it is *more* important for that reason. The lake eco system which has virtually no wetlands remaining in its watershed is enhanced by the subject wetland. It would be a frank and serious violation of the whole spirit of our wetlands probation regulations to permit filling such a unique and vital habitat." (Emphasis in original.)

---

[4] Exhibit E. The exhibits referred to are those set forth in the return of record of the defendant as the papers acted on by the defendant.

Both the city engineer and the public works director were of the opinion that no filling should be allowed on the lot. Many neighbors spoke at the hearing citing the problems of downstream flooding. In addition, the plaintiff's own expert gave contradictory opinions that support the defendant's decision. In Virginia Burkhardt's report, she refers to the map as revised on May 6, 1985, stating, "the proposed house would be built on a slab at grade," that the wetlands pocket was "covered with ice at the time of the field inspection thus limiting observation of vegetative species and any inlets and outlets associated with the wetlands . . ." and that "[r]unoff from the house is to be directed into the existing storm water system on West Main Street resulting in no increases in runoff to the wetland. *The slab at grade construction insures that there will be no large amounts of fill placed on the lot, which could extend into the wetland and/or direct runoff onto adjacent properties.*" (Emphasis added.)

Burkhardt's report, however, had deficiencies. The map, as modified on January 8, 1988, clearly shows that the structure would have been built on a slab, but that the slab would have been almost two feet above the average grade, inlets and outlets from the wetland go through a six inch pipe on adjoining property, and the structure on the slab is thirty-two feet south of the southern edge of the flagged wetlands, 2.1 feet above the grade of the wetlands. The conclusion that, at grade, construction ensures either no large amounts of fill, or no runoff into wetlands or adjacent properties could reasonably be found by the defendant to be incorrect.

Exhibits P, R, V and X and the map as modified on January 8, 1988, show that there will be fifty-five cubic yards of fill, and that the proposed house is 1.5 to 2.1 feet higher than the other land surrounding it.[5]

---

[5] Exhibit P is a packet of information including the minutes of the defendant's October 10, 1989 meeting and information provided by the plaintiff

After a thorough review of the record, we conclude that the trial court correctly decided that the defendant's denial of the plaintiff's application was based on substantial evidence.

The judgment is affirmed.

In this opinion the other judges concurred.

to the defendant. Exhibit R is the plaintiff's third application, filed on November 21, 1989. Exhibit V is the minutes of the defendant's January 8, 1990 meeting. Exhibit X is a transcript of that portion of the defendant's January 8, 1990 meeting which addressed the plaintiff's application.