[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. FACTS AND BACKGROUND
On August 19, 1991 the plaintiff developer, John Lawrence, appeared before the Bloomfield Inland Wetlands and Watercourse Commission pursuant to his application to amend the official wetlands boundary so the plaintiff could proceed with his subdivision development known as "Fairfield Homes." In response to this appearance the defendant Commission approved redrawing wetland boundary lines. Subsequent to this redrawing of the CT Page 13807 boundary lines, the Commission continued with consideration of an application by the plaintiffs for a wetland permit for the Fairfield Homes development. Because of many concerns expressed by the Commission at that meeting the plaintiff's application was tabled until the Commission's next meeting.
The Commission's next meeting was conducted on September 19, 1991 at which time the Commission heard from the plaintiff, Mr. Lawrence, as he presented his revised plans in response to the Commission's earlier concerns. At the conclusion of that hearing Commissioner Giddings moved to approve Mr. Lawrence's application for the proposed subdivision "Fairfield Homes" thereby creating twelve new lots with 700 plus feet of road frontage. Houses, garages, pavement and utilities were not to encroach on the wetland. At the time of this approval the Commission imposed six conditions on the wetlands approval.
It is evident from the conditions of approval that the Commission viewed the property as a sensitive area and exercised effort to balance protection of the wetlands with the property owners development rights.
Soon after the Commission's approval, the plaintiff proceeded to construct a road known as Fairfield Lane that would serve the subdivision. He also excavated a detention basin in the north central area of the subdivision.
In September of 1992 and at a continuation of that hearing in October of 1992, the plaintiff sought to modify his proposal as previously approved by the Commission. The plaintiff sought to re-subdivide the property so that four lots could be placed on land where two lots had previously been approved. The Commission concluded that this change would have an adverse affect on the adjacent wetlands and denied the application for the re-subdivision of lots 7 and 8 into four building lots. The applicant did not appeal that decision of the Commission.
On September 30, 1994, the plaintiff filed the present application for a permit. The present application again proposed four houses on the previous lots 7 and 8. The present application again proposed re-subdivision of these two lots into four building lots. The Commission reviewed this application at its October 17, 1994 meeting and the motion to approve the application was defeated unanimously. CT Page 13808
The Commission held an additional meeting on this matter on November 14, 1994 at which time reasons for the previous disapproval were stated. Although the court questions the right of the Commission to draft reasons at a meeting following the meeting at which the original disapproval was voted, the court recognizes that it has the right to search the record for reasons and will use the reasons adopted at the November 14, 1994 as indicative of reasons which might be found in the record.
AGGRIEVEMENT
The evidence establishes that John J. Lawrence was the owner of the subject property and is aggrieved.
DISCUSSION
The reasons given by the Commission for its denial were as follows:
 "1. The environmental impact of the proposed action would be detrimental to the wetlands because they act as a buffer to the adjoining buffer to the north and west. A house that close to the wetlands would invite detrimental circumstances that there would be no control over.
 2. Relationship of short/long term enhancement; the house would be permanence so that the long term enhancements would not outweigh the short term gain of the additional houses.
 3. The area is suitable for houses in the general area, however, the area proposed is unsuitable.
 4. The splitting of the application limited the ability of the Commission in finding feasible alternatives such as repositioning lot lines and moving houses into a distance that would have a less significant impact on the wetlands.
 5. This is essentially the same application that was denied in 1992, and there has been no significant changes that would warrant changing that decision.
 6. The applicant in the past has not complied with conditions of previous permits."
The court holds that reasons 4 and 6 are not sufficient under CT Page 13809 the circumstances of this case to support the denial of the application. With regard to reason 4, the ability of the Commission to examine alternatives refers to alternatives on the affected property, not alternatives on adjacent property. Therefore reason 4 is insufficient. With regard to reason 6, the fact that the applicant may have been less than cooperative in fulfilling previous conditions, even if this lack of cooperation is supported by the record, does not support a permit denial.
Reasons 1, 2 and 3 are factual conclusions which correspond to the criteria set forth in § 22a-41(a)(1), (3) and (6) of the Inland Wetlands Watercourses Act and § 6.5d(i)(iii)(vi) of the Defendant's Regulations. These conclusions must be tested against the evidence. The court must determine whether the evidence supports a finding that the proposed use would be detrimental to the wetlands.
Before turning its attention to the question of whether or not the record supports any of reasons 1, 2 and 3, the court examines reason number 5. The Appellate Court has held in Bradleyv. Inland Wetlands, 28 Conn. App. 48, 51:
 "Administrative agencies are impotent to reverse [themselves] unless 1) a change of condition has occurred since its prior decision or 2) other considerations materially affecting the merits of the subject matter have intervened and no vested rights have arisen. [citations omitted]. The principal applies, however, only when the subsequent application seeks substantially the same relief as that sought in the former." [citations omitted].
The court is satisfied that the instant application is not the same application that was denied by the defendant in 1992. It differed from the earlier application in that the proposed dwellings were arguably reduced in size and two of them were relocated so as to be entirely outside of the buffer area. Although the plaintiff by his later application was seeking approval of the same basic re-subdivision, the proposed improvements had been relocated and apparently reduced thereby differentiating it from the earlier applications. Thus, while the court recognizes that both Bradley v. Inland Wetlands Agency,28 Conn. App. 48 (1992) and Strong v. Conservation Commission,28 Conn. App. 435 (1992) support the proposition that an applicant may not make successive applications for precisely the same permit, the court is satisfied that there are enough differences CT Page 13810 between these applications to warrant the court's considering the merits of the denial.
The court notes that in reviewing decisions of land use agencies it may not substitute its discretion for the evidentiary findings of the agency if there is a reasonable evidentiary basis for the agencies finding. Huck v. Inland Wetlands andWatercourses, 203 Conn. 525, 539-540 (1987). The evidence to support the decision must be substantial. Huck at 540.
There is little question that the October 1994 application bore many similarities to the September 1992 application which had been considered in great detail by the Commission. At the October 1994 hearing, the Commission found that the detention area between the subject lot 7 and 8 had become an even more precious wetlands habitat. Commissioner Giddings noted that the Commission needed to concern itself with how a typical residential property is utilized and consider the impact of humanity on the ecosystem. Fertilizers, pesticides, car wash material, solvents and the like call run off from residential area into the wetlands causing serious pollution to the wetlands. Amended Record Exhibit 19 at 8 and 9 and Exhibit 25 at 2. The Commission agreed with Commissioner Giddings that the application should be denied primarily because the additional proposed houses could have a detrimental impact on the wetlands.
The instant case appears similar to Huck v. Inland Wetlands,203 Conn. 525. In Huck the plaintiff presented numerous experts claiming that the project would not cause pollution. In the instant case, at the meetings in September of 1992 and October 1992, the plaintiff's expert, Henry T. Moeller, appeared and testified that the proposed re-subdivision would have absolutely no adverse affect upon the site's wetlands. Nevertheless, theHuck defendant determined that the project had the potential for pollution and denied the plaintiff's application. The defendant in Huck considered the expert testimony but the commission members themselves were familiar with the proposed project location and the court found that their familiarity with the site was also properly considered by the Commission in rendering its decision. The court notes that an administrative agency is not required to believe any witness, even an expert. MannerDevelopment Corp. v. Conservation Commission, 180 Conn. 692
(1980). Mr. Moeller's last written report concerning the site was completed some three years before the 1994 hearing. CT Page 13811
The court recognizes that cases such as Tanner v.Conservation Commission, 15 Conn. App. 336 (1988); Milardo v.Inland Wetlands Commission, 27 Conn. App. 214 (1992) and particularly Feinson v. Conservation Commission,15 Conn. App. 336 (1988) all limit the right of commission members to use their own knowledge to reach a conclusion which is contrary to expert testimony presented to them. However, in each of those cases the records were either incomplete or inadequate. Moreover, in the instant case since the subdivision had been largely built, commission members were not dealing exclusively with expert opinion testimony such as was presented in Feinson. Rather, members could observe with their own senses the effects of the subdivision on the wetlands.
For the foregoing reasons, the court concludes that there was sufficient evidence before the Bloomfield Inland Wetlands and Watercourses Commission from which it could find an adverse affect on the wetlands and deny a wetlands permit for the re-subdivision of lots 7 and 8.
The appeal is dismissed.
Kevin E. Booth, Judge