[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, William A. Opppenheimer and Kathleen F. Oppenheimer, appeal from a decision of the Redding Conservation Commission, granting a license to conduct regulated activities on a portion of a proposed four lot subdivision at 9 and 11 Putnam Park Road, Redding.
On February 25, 1997, the Commission, which acts as the inland wetlands agency of the Town of Redding, received an application from the defendants, Alfred and Sharon Dietzel, to conduct a regulated activity at 9 and 11 Putnam Park Road. (ROR 3.)
The initial application concerned contemplated four lot subdivision, and listed a proposed primary septic system within 150 feet of a watercourse on proposed Lot 1, as an anticipated regulated activity.
An alternative relocation of the septic system was also discussed. (ROR 3.)
The property sought to be subdivided consists of 14.84 acres, and is situated in an R-2 (2 acre minimum) zone. It contains approximately 2.01 acres of wetlands. (ROR 68.)
The site has both historical and archeological significance, having been the location of Lonetown Manor, owned by colonial lawyer, John Reed, for whom the Town of Redding was named.
Upon receipt of the application, the Commission began a lengthy review of the proposal before the first of three public hearings was convened on June 3, 1997.
The application was first discussed by the Commission on March 18, 1997 (ROR 5), in conjunction with the pre-application findings. (ROR 1.) CT Page 13268
At that time, Robert Jontos of Land Tech Consultants, an expert engaged by the applicant, explained the proposed subdivision.
A site walk of the property was scheduled and was conducted on March 23, 1997. (ROR 6.)
On March 31, in a memorandum addressed to the town's Planning Commission, the town's consultant, John Hayes, reviewed all of the ramifications of the application from a planning, historical and wetlands perspective. (ROR 8.)
Septic problems were identified regarding the placement of septic fields within 150 feet of a watercourse.
Hayes identified an alternative location for the septic system in the rear of proposed Lot 1, which did not impinge upon the 150 foot setback requirement. (ROR 8, p. 3.)
Also reviewed was Alternative 2, which included as a regulated activity the use of an existing driveway as an access way to proposed Lot 1.
This alternative, Hayes indicated, would have "extremely minimal impact on the wetland, environmentally much preferable to the risk of a septic system . . . at the front of Lot #1." (ROR 8, p. 4.)
The Commission met and discussed the proposal on April 1, 1997, and again on April 15, 1997.
At its May 6, 1997 meeting, the Commission discussed the information which had been gathered, and voted to hold a public hearing on June 3, 1997. (ROR 5.)
Questions were raised at the meeting regarding the mapping of the wetlands, and about each of the three alternatives which were before the Commission for consideration.
At the June 3 public hearing, all three alternatives developed by the applicant during the three months following the initial submission of the application were presented, discussed and examined. (ROR 75.) CT Page 13269
Alternative No. 1 involved a driveway and leaching fields within 150 feet of a watercourse as regulated activities.
Alternative No. 2 involved a driveway through a portion of the wetlands, over an existing trail, while Alternative No. 3 involved grading associated with the construction of a dwelling, as well as a driveway as regulated activities.
All regulated activities in each alternative involved regulated activities only on proposed Lot #1.
No regulated activities were proposed on the remaining three lots, Lots 2, 3, and 4.
The public hearing was continued on June 17, 1997, at which time the applicants presented changes in response to issues raised at the prior hearing and in correspondence. (ROR 47.)
Commission staff member, Barbara Obeda, an environmental consultant, questioned the accuracy of the wetlands mapping. (ROR 47 and ROR 76.)
On June 27, the plaintiffs, William and Kathleen Oppenheimer, filed a notice of intervention pursuant to § 22a-19(a) of the Connecticut General Statutes, claiming the proceedings involved:
 [C]onduct which has, or is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state.
At the resumed public hearing on July 1, the issue of the accurate mapping of the wetlands was addressed by the applicant, with reference to the findings of soil scientist, Jay Fain, and a survey performed by Bob Jontos of Land Tech. (ROR 77, pp. 9-10.)
Neither the Commission or the plaintiffs provided any information or testimony from a certified soil scientist designed to refute those findings.
On August 5, 1997, the Commission discussed and voted upon the application to conduct a regulated activity on a portion of 9 and 11 Putnam Park Road.
The Commission considered which of the alternatives reduced CT Page 13270 the number of regulated activities, as well as the opinion of its own expert regarding the potential impact of the regulated activities. (ROR 79.)
The Commission alluded to the July 15, 1997 meeting, during which it was pointed out that the access way proposed as a driveway had been utilized in the past, soil compression had occurred, and wetlands soil functions had been diminished. (ROR 60.)
The vote to approve the application was six in favor and one opposed. (ROR 61.)
Notice of the decision was published in the Redding Pilot on August 14, 1997 (ROR 63 and ROR 64), and the plaintiffs field this appeal.
In addition to the Redding Conservation Commission, the applicants, Alfred and Sharon Dietzel, and the Commissioner of Environmental Protection, were named as defendants.
AGGRIEVEMENT
The plaintiffs claim to be aggrieved by the decision of the Redding Conservation Commission to grant a license to Alfred and Sharon Dietzel.
Section 22a-43 of the Connecticut General Statutes provides:
 [A]ny person owning or occupying land which abuts any portion of land or is within a radius of ninety feet of the wetland or watercourse involved in any regulation, order, decision or action . . . may, within the time specified in subsection (b) of section 8-8 from the publication of such regulation, order, decision or action, appeal to the superior court for the judicial district where the land affected is located. . .
The plaintiff, William Oppenheimer, testified that he and his wife Kathleen own property which abuts 9 and 11 Putnam Park Road, the parcel affected by the Commission's decision.
Although the standard for classical aggrievement is applicable to an appeal from a decision of an inland wetlands agency; Huck v. Inland Wetlands Watercourses Agency, CT Page 13271203 Conn. 525, 530 (1987); the plaintiffs have established statutory aggrievement through their ownership of 186 Lonetown Road.
In situations where a plaintiff has proven statutory aggrievement, it is unnecessary to consider issues of classical aggrievement. McNally v. Zoning Commission,225 Conn. 1, 8 (1993).
The plaintiffs are aggrieved by the decision of the Redding Conservation Commission.
STANDARD OF REVIEW
When reviewing a decision of a municipal wetlands agency, a court is not charged with undertaking a broad de novo review of the record. Huck v. Inland Wetlands Watercourses Agency, supra, 541.
Municipal wetlands agencies have been given broad discretion to oversee municipal wetlands activities. Kaeser v. ConservationCommission, 20 Conn. App. 309, 317 (1989); Klug v. InlandWetlands Commission, 19 Conn. App. 713, 717-18 (1989).
An agency decision must be sustained if the record reveals that it is supported by substantial evidence. Kaeser v.Conservation Commisison, supra, 311; Bradley v. Inland WetlandsAgency, 28 Conn. App. 48, 52 (1992).
The substantial evidence rule has been defined as similar to an analogous to the standard to be applied in judicial review of a jury verdict. It must be enough to justify if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. Samperi v.Inland Wetlands Agency, 226 Conn. 579, 588 (1993); Bradley v.Inland Wetlands Agency, supra, 52 n. 3.
A trial court must search the record to determine if there exists an adequate basis to support the decision. Gagnon v.Inland Wetlands Watercourses Commission, 213 Conn. 604, 611
(1990).
Issues involving the credibility of witnesses and determinations of fact, are matters properly committed to the province of the administrative agency. Laufer v. ConservationCommission, 24 Conn. App. 708, 713 (1991); Huck v. InlandCT Page 13272Wetlands Watercourses Agency, supra, 540-41.
The burden is upon the party challenging the action to establish that the record does not support the decision reached by the agency. Red Hill Coalition, Inc. v. ConservationCommission, 212 Conn. 710, 718 (1989).
The agency is not required to use the evidence and materials presented to it in a particular fashion so long as the conduct of the hearing is fundamentally fair. Bradley v. Inland WetlandsAgency, supra, 53-54.
AGENCY DECISION FINDS AMPLE SUPPORT IN THE RECORD
The record compiled before the Redding Conservation Commission consisted of voluminous material, including testimony and reports of expert witnesses engaged by the applicant, input from Commission staff members, and the comments of interested citizens.
The original submission was scrutinized carefully, and some deficiencies were identified.
The plaintiffs complain that the Commission had before it insufficient evidence to determine the wetlands boundaries.
This claim is directly refuted by the only testimony offered from a certified soil scientist. (ROR 77, pp. 9-10).
The applicant complied with all notice requirements (ROR 58 and ROR 72), and evidence before the Commission supported the fact that soil percolation tests were performed in accordance with the Public Health Code. (ROR 77, p. 4.)
Although three alternative proposals were before the Commission, it selected Alternative #2, a plan which required only a single regulated activity, construction of a driveway over an already existing trail.
The Commission considered "feasible and prudent" alternatives, consistent with the statutory mandate of § 21a-41(b) of the Connecticut General Statutes.
Sufficient evidence was presented to the Commission to permit it to find that the decision strikes the appropriate balance. It CT Page 13273 is sound from an engineering standpoint, and is economically reasonable. Sampieri v. Inland Wetlands Agency, supra, 595.
The plaintiffs further argue, without citing any competent authority, that their intervention pursuant to § 22a-19 of the Connecticut General Statutes establishes a higher standard and expands the province of the Commission to areas unrelated to wetlands.
This claim is not persuasive.
Section 22a-19 does not expand the jurisdictional authority of an administrative agency. A local inland wetlands agency is not a little environmental protection agency. Its authority is limited to the wetland and watercourse area that is subject to its jurisdiction. Connecticut Fund for the Environment, Inc. v.Stamford, 192 Conn. 247, 250 (1984).
A review of the record in this case makes it unambiguously clear that the Redding Conservation Commission took seriously its statutory mandate and acted conscientiously to preserve and protect the "indispensable and irreplaceable but fragile natural resources" under its jurisdiction. Section 22a-36 of the Connecticut General Statutes.
The Commission consulted with and received detailed input from both its own staff experts and those provided by the applicants.
It carefully examined and scrutinized three alternative plans, and selected the alternative it believed had the least impact upon the wetlands both on and off the site at 9 and 11 Putnam Park Road.
It held public hearings on three occasions, and conducted a site walk.
The record further reveals a sensitivity toward and an appreciation of the historical and archeological character of the property, although such concerns were not directly related to its wetlands responsibilities (although perhaps relevant to considerations of open space).
The plaintiffs have failed to present any valid substantive or procedural criticism of the Commission's decision, or the CT Page 13274 process used in arriving at that decision.
The appeal of the plaintiffs, William A. Oppenheimer and Kathleen F. Oppenheimer, is therefore dismissed.
Radcliffe, J.