[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff is the owner of real property known as Parkland Estates Section 4 as shown on a map entitled "RECORD SUBDIVISION MAP PARKLAND ESTATES — SECTION FOUR PREPARED FOR EDWARD I. BUSHKA, ET AL, PARK ROAD, MIDDLEBURY, CONNECTICUT" dated April 21, 1999, Scale 1"=60' Sheet 1 of 6. (Appeal, ¶ 1.) On May 19, 1999, the plaintiff filed an application with the commission for the relocation of a watercourse and the construction of a detention basin and a culvert crossing over an existing dirt driveway. (Return of Record [ROR], Item 2a, p. 2.) Along with his application, the plaintiff filed the "RECORD SUBDIVISION MAP PARKLAND ESTATES — SECTION FOUR' sheets one through six; (ROR, Item 2b); and a Connecticut department of environmental protection statewide inland wetlands and water — courses activity reporting form. (ROR, Item 2c.) The commission discussed the plaintiff's application at its meetings of May 25, 1999; (ROR, Items 6, 7, 34); June 29, 1999; (ROR, Items 8, 9, 35); July 27, 1999; (ROR, Items 10, 11, 36); August 31, 1999; (ROR, Items 12, 13, 37); and September 28, 1999. (ROR, Items 14, 15, 38.) The commission denied the plaintiff's application on September 28, 1999. (ROR, Item 31.) Denial of the application was published on October 3, 1999. (Appeal, ¶ 8; ROR, Items 32, 33.)
The plaintiff filed the present appeal against the commission and the commissioner of the department of environmental protection on October 2, CT Page 13959 1999. The plaintiff filed a supporting brief on October 30, 2000. The commissioner of the department of environmental protection, though he did not participate in the proceedings before the commission, filed a brief on January 16, 2001, in support of the commission. The commission filed a brief in opposition to the appeal on February 5, 2001.[1] The court heard oral argument on June 12, 2001, and found the plaintiff to be aggrieved at that time.
"It is fundamental that appellate jurisdiction in administrative appeals is created only by statute and can be acquired and exercised only in the manner prescribed by statute." Munhall v. Inland WetlandsCommission, 221 Conn. 46, 50, 602 A.2d 566 (1992). General Statutes § 8-8 and § 22a-43[2] govern an appeal from the decision of an inland wetland agency to the Superior Court.
General Statutes § 22a-43 (a) provides, in pertinent part, that an appeal may be commenced "within the time specified in subsection (b) of section 8-8 from the publication of such regulation, order, decision or action . . ." General Statutes § 8-8 (b) provides that an "appeal shall be commenced by service of process in accordance with subsections (f) and (g) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes."
"Service of legal process . . . shall be directed to a proper officer and shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality." General Statutes § 8-8 (f).
The record in the present case contains a copy of the publication of the decision dated October 3, 1999. (ROR, Item 32.) The plaintiff's appeal was commenced by service of process on the commissioner of the department of environmental protection on October 13, 1999. The appeal was served on the commission and the Middlebury town clerk on October 18, 1999. Accordingly, the court find that this appeal was commenced in a timely manner by service of process upon the proper parties.
Regulation of inland wetlands and watercourses is governed by the Inland Wetlands and Watercourses Act, General Statutes §§ 22a-36 to22a-45, inclusive. The act delegates to municipalities the power to effectuate the purposes of the act; see General Statutes § 22a-42
(a); and directs the municipalities to establish commissions and promulgate regulations in accordance with the act. See General Statutes § 22a-42 (c). The legislature limited the power of the municipal commissions to those actions within the scope of the act and requires the commissions to incorporate the factors listed in General Statutes § CT Page 13960 22a41(a)[3] when considering action on an application. See General Statutes § 22a-42 (f).
"Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable." (Internal quotation marks omitted.) Cadlerock Properties v. Commissioner, 253 Conn. 661,676, 757 A.2d 1 (2000). "In challenging an administrative agency action, the plaintiff has the burden of proof." Samperi v. Inland WetlandsAgency, 226 Conn. 579, 587, 628 A.2d 1286 (1993)." [T]he plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision. . . . The trial court must search the record of the agency hearings to determine whether there was an adequate basis for the inland wetlands commission's decision. The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial; [t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency." (Citations omitted; internal quotation marks omitted.) Forsell v. ConservationCommission, 43 Conn. App. 238, 243-44, 682 A.2d 595 (1996).
[E]vidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact at issue can be reasonably inferred . . . The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . . [A]n administrative agency is not required to believe any witness, even an expert, nor is it required to use in any particular fashion any of the materials presented to it so long as the conduct of the hearing is fundamentally fair." (Internal quotation marks omitted.) Id., 243.
As will be discussed, the commission stated several reasons for the denial of the plaintiff's application. The plaintiff appeals on the grounds that the commission failed to state specific reasons for the denial, the commission did not find that a feasible and prudent alternative exists and the commission's denial is not supported by the record.[4]
The plaintiff argues the commission did not state specific reasons on the record for its denial pursuant to General Statutes § 22a-42a (d) (1). He contends the commission merely "stated in a conclusory manner certain reasons for denial." (Appeal, ¶. 15.) The plaintiff does not CT Page 13961 cite any authority supporting his proposition that the statement of reasons must be more specific than the commission provided.
Section 22a-42a (d)(1) provides in relevant part: "In granting, denying or limiting any permit for a regulated activity the inland wetlands agency, or its agent, shall consider the factors set — forth in section 22a-41, and such agency, or its agent, shall state upon the record the reason for its decision." The Supreme Court has "held that it is improper for the reviewing court to reverse an agency decision simply because an agency failed to state its reason for its decision on the record. The reviewing court instead must search the record of the hearings before that commission to determine if there is an adequate basis for its decision." (Internal quotation marks omitted.) Samperi v.Inland Wetlands Agency, supra, 226 Conn. 588-89.
The commission's decision stated the following reasons for the denial of the plaintiff's complaint: "Changes in velocity and volume of water — flow or in the water table and their effects; Changes in the physical, chemical and biological properties of the water, soil and their impact; The proposed activities would have an adverse effect on the downstream properties; The relationship of the short — term and long — term impacts and the maintenance and enhancement of long — term productivity of such wetlands or watercourses; Adequate information has not been provided to ensure downstream properties will not be effected from post development drainage." (ROR, Item 33.) The statement of reasons indicates that the commission considered the factors set forth in § 22a-41. The reasons were stated upon the record and provided to the plaintiff. The court may find that the commission's failure to more specifically cite facts supporting those reasons is not fatal to its decision. Accordingly, the court should search the record to determine if substantial evidence supporting the commission's reasons exists in the record.
The plaintiff argues the commission may not deny an application unless it finds that a feasible and prudent alternative exists. The plaintiff relies on General Statutes § 22a-41 (b)(2), which provides: "In the case of an application which is denied on the basis of a finding that there may be feasible and prudent alternatives to the proposed regulated activity which have less adverse impact on wetlands or watercourses, the commissioner or the inland wetlands agency, as the case may be, shall propose on the record in writing the types of alternatives which the applicant may investigate provided this subdivision shall not be construed to shift the burden from the applicant to prove that he is entitled to the permit or to present alternatives to the proposed regulated activity." The commission argues that § 22a-41 (b)(2) does not apply to the present matter. CT Page 13962
General Statutes § 22a-41 (a)(2) requires the commission to consider feasible and prudent alternatives to the proposed plans. In the present case, the commission's decision was not based on a finding that there were no feasible and prudent alternatives, however, the existence of feasible and prudent alternatives is implicit in its decision to deny the permit. "Although the agency may manifest its finding explicitly, in those cases in which its finding is implicit in its decision, the reviewing court has the responsibility to search the record for substantial evidence in support of the agency's action." Samperi v.Inland Wetlands Agency, supra, 226 Conn. 593. The commission did not deny the permit based on a finding that there were feasible and prudent alternatives. The commission denied it based on a lack of substantial evidence with respect to the flooding of downstream properties, as well as, deficiencies in the proposed site plan and the application. These findings indicate that the commission is not convinced that this proposal is the only feasible and prudent alternative.
Furthermore, although § 22a-41 (b)(2) requires the commission to list alternatives if the application is denied on the basis that there are feasible and prudent alternatives, it also requires the plaintiff to present alternatives and does not relieve the plaintiff of the burden to prove no feasible and prudent alternatives exist. "Our Supreme Court . . . has stated that it is the plaintiff, not the commission, that must demonstrate no feasible and prudent alternatives exist. . Moreover, General Statutes § 22a-41 (b)(2) expressly provides that while the commission may suggest reasonable and prudent alternatives, the burden remains with the applicant to demonstrate no alternatives exist. . . . The plaintiff in this case did not prove that no feasible and prudent alternatives exist." (Citations omitted.) Maiolo Real Estate InvestmentCo., Inc. v. Conservation and Inland Wetlands Commission, Superior Court, judicial district of Tolland at Rockville, Docket No. 764143 (May 18, 1999, Stengel, J.) Similarly, in the present came, the plaintiff failed to sustain its burden to prove that there were no feasible and prudent alternatives to the plan. During the May 25, 1998 meeting, the commission informed the plaintiff that alternate plans were required. (ROR, Item 34, p. 13.) On June 29, 1999, the plaintiff submitted alternate proposals, which had already been submitted, reviewed and rejected at previous board meetings. (ROR, Item 35, p. 16.) Although the plaintiff changed certain aspects of the current proposal based on some of the commission's concerns, the plaintiff did not sustain it. burden to demonstrate to the commission that there are no feasible and prudent alternatives to the current proposal. Additionally, as discussed below, the commission stated other reasons for the denial which were supported by substantial evidence in the record. CT Page 13963
The plaintiff argues the commission's reasons for the denial are not supported by the record. He contends that every concern raised by the commission was satisfactorily addressed by revisions to the application.
As previously indicated, the commission's stated reasons for its denial are Changes in velocity and volume of water flow or in the water table and their effects; Changes in the physical, chemical and biological properties of the water, soil and their impact; The proposed activities would have an adverse effect on the downstream properties; The relationship of the short — term and long — term impacts and the maintenance and enhancement of long — term productivity of such wetlands or watercourses; Adequate information has not been provided to ensure downstream properties will not be effected from post development drainage." (ROR, Item 33.) The commission stated that the impact of the application on downstream property owners was its main concern. ( ROR, Item 38, p. 39.) The court has reviewed the transcripts of four of the five hearings at which the plaintiff's application was discussed to determine if evidence supporting the commission's decision exists in the record.[5]
Consideration of the impact on downstream property owners is appropriate under § 22a-41 (a)(5), which requires the commission to consider" [t]he character and degree of injury to, or interference with, safety, health, or the reasonable use of property which is caused or threatened by the proposed regulated activity . . ." See Ellenthal v.Inland Wetland and Watercourses Agency, Superior Court, judicial district of Stamford — Norwalk at Norwalk, Docket No. 129782 (April 19, 1994, Alander, J.). In the present case, the record reveals evidence of flooding of downstream properties prior to the proposed application. The record contains a letter from Bernice and Tom Boyd, owners of downstream property since 1953, which documents the existing runoff and its effects. (ROR, Item 20.) The commission also noted that the downstream properties have a history of flooding and cited its personal observations. (ROR, Item 34, p. 6; Item 35, pp. 21-22; Item 36, pp. 33-34; Item 38, pp. 39, 41-43.) The record clearly demonstrates that the proposed application may affect the safety, health or reasonable use of the abutting landowner's property. Therefore, the commission's concern for adverse impacts on downstream properties is appropriate in its consideration of the plaintiff's application.
The plaintiff made several alterations to the application to address the commission's concerns. For example, the plaintiff eliminated lot seven; (ROR, Item 39, p. 37); and replaced the detention pond with a level spreader to be located outside the regulated area. (ROR, Item 35, p. 18.) The plaintiff's engineer, Terry Meyers, presented the level spreader to the commission as a method of recharging the groundwater and CT Page 13964 controlling the existing runoff as well as any increase created by the proposal. (ROR, Item 35, pp. 18, 20.) Terry Meyers pointed out that the level spreader would collect the sheeting flow that concerned the commission along with the output of the catch basins. The level spreader would contain the water, allowing for recharge and filtration, and then release the flow across its length, which would lessen erosion and concentration of the flow. (ROR, Item 35, p. 21; Item 36, p. 35.)
The commission agreed that the level spreader could provide good control of flow and conserve water, but expressed concern that such a measure required long — term maintenance to ensure its continued functioning. (ROR, Item 36, p. 30.) The commission's concerns were echoed by its consultant. (ROR, Item 28.). In response to the commission's concerns regarding maintenance, the plaintiff provided a condition in the deed of lot six requiring the owner of lot six to maintain the level spreader. (ROR, Item 30.) The plaintiff also provided a maintenance agreement between the town and the owner of lot six that granted the town the right to enter onto lot six to inspect the level spreader, provide maintenance if necessary and to recover its costs of maintenance. (ROR, Item 29.)
Despite the several changes that were made to the plan, the commission still found deficiencies in the application. At the July 27, 1999 meeting, the chairman acknowledged that the swales around the houses were a "superb idea", but stated that without proper maintenance they would not work. (ROR, Item 36, p. 30.) Terry Meyers agreed with the commissioner, stating that "most people that have swales around their houses, need maintenance." (ROR, Item 36, p. 30.) The attorney for the plaintiff, suggested creation of a homeowner's association to oversee the maintenance and the commission pointed out how these things were not addressed until that evening. (ROR, Item 36, p. 31.) The maintenance of the swales was never addressed in subsequent meetings before the commission, nor was a maintenance plan for the swales incorporated into the plan.
The commission suggested twice that the plaintiff should withdraw the application at the July 27, 1999 meeting. (ROR, Item 36, pp. 25, 29.) Additionally, the chairman suggested that the plaintiff defer the application, "come to a meeting informally with whatever plan you have, and then the following month put the plan in place. This way we have an opportunity to talk to you and tell you we don't like that and this is what we think you should do." (ROR, Item 36, p. 35.) Instead of deferring it, the plaintiff decided to draw up alternative plans and submit them within a week. The plaintiff agreed to eliminated lot #7 and, to revise the plans accordingly. (ROR, Item 36, p. 37.) The commission also suggested that the plaintiff do some "planting and work at lot #7 to CT Page 13965 contain the water that is flowing down there now." (ROR, Item 36, p. 37.)
At the September 28, 1999 meeting the commission expressed concern about the information that was still missing from the proposal. (ROR, Item 38, p. 41.) The chairman pointed out the fact that there are watercourses on the proposed site, which are not delineated on the plans. (ROR, Item 38, p. 39.) Scott Meyers, representative for the plaintiff, said he noticed that as well. (ROR, Item 38, p. 39.) Although the plaintiff argues that Scott Meyers pointed out where the watercourses were on the plans, the record shows that he merely described the general location of the watercourses. (ROR, Item 38, p. 40.) The commission's consultant, Robert D. King, stated. in a report to the commission that there were wetlands or drainage courses on the maps accompanying the application, which were not depicted in the plans. (ROR, Item 28.) This supports the chairman's observation that some of the watercourses were not included in the plans.
The chairman also noted that the level spreader did not correspond to the contours in the building plan, which the commission's consultant also pointed out, and expressed concern about the town's ability to access the properties to inspect and maintain the equipment. (ROR, Item 38, pp. 40-41.) Scott Meyers suggested the creation of a dirt road to allow physical access to the level spreader, but he "didn't know the exact schedule . . . when they are supposed to maintain these." (ROR, Item 38, p. 41.) The chairman stated that "we're still missing pieces of this. You know it just, it just makes me concerned because now, with these pieces missing what else is missing? Every time I look at it I find something else missing." (ROR, Item 38, p. 41.).
Furthermore, the revised plans do not reflect all of the changes the plaintiff had agreed to prior to the September 28, 1999. The plans still propose a house on lot #7. (ROR, Item 19, pp. 1-2, 5.) Additionally, instead of combining lots #6 and #7 into one large lot, as suggested by the commission, these lots remain two separate lots,. (ROR, Item 19, pp. 1-2, 5.) The plaintiff also failed to incorporate into the plan the commission's suggestion to do planting or other work on lot #7. (ROR, Item 19, pp. 1-2, 5.) The record further reveals that the commission and the plaintiff never agreed upon appropriate compensation for the loss of 2000 square feet of wetlands to construct the road that provides access to the lots. Possible compensation plans, such as the creation of new wetlands and providing more open space, were discussed at the July 27, 1999 meeting, but the commission never indicated that either of these would provide adequate wetlands mitigation.
"The court is limited to a review of the evidence and reasoning the CT Page 13966 agency has placed on the record. Agency decisions must be sustained if the record reveals substantial evidence in support of any reason given. Id., 539-40. Kaeser v. Conservation Commission, 20 Conn. App. 309, 311,567 A.2d 383 (1989) Bradley v. Inland Wetlands Agency, 28 Conn. App. 48,52, 609 A.2d 1043 (1992). In the present case, the commission expressed that its main reason for denying the appeal was inadequate information demonstrating that the proposed activities would not have an effect on downstream property owners. The record shows that the commission's concerns about the effects on the downstream properties were not alleviated and they stated this at the September 28, 1999 hearing. (ROR, Item 38, p. 43-44.) The record supports the commission's decision, — because the plaintiff failed to incorporate many of the changes agreed upon into the revised plan, and there were still items that were overlooked, including a maintenance schedule for the level spreader and a maintenance agreement requiring property owners to maintain the swales on their property. Additionally, the plans did not depict some of the watercourses and wetlands on the property.
Based on the history of flooding problems for the downstream property owners, it is reasonable for the commission to require the plaintiff to submit a complete application addressing all of its concerns prior to approving it. Although the plaintiff may view each oversight as a minor issue, each item that is not reflected in the plans prevents the commission from making a well — informed decision regarding the effects of the project on the downstream properties. Clearly, the record contains substantial evidence to support the commission's decision to deny the permit.
The record does not contain adequate evidence regarding the effect on the downstream properties, and the commission was not convinced that the level spreader would alleviate the possibility of increased flooding. Additionally, the plans failed to reflect the changes agreed upon by the plaintiff and to depict watercourses and wetlands located on the proposed building mite. Accordingly, the commission's decision was not arbitrary, capricious, illegal or in abuse of its discretion. The plaintiff's appeal is dismissed.
THOMAS G. WEST, J.