[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a zoning appeal from a decision of the defendant planning and zoning commission approving, with conditions, a subdivision plan CT Page 10869 submitted by the defendant intervenor George Colli, Jr. As an abutting property owner, the plaintiff Beatrice Duni is aggrieved and has standing to appeal. I make no finding as to the co-plaintiff Halladay/Somerwynd, which is represented by the same counsel as Duni.
I have reviewed the contents of the entire record submitted, including but not limited to the application, detailed maps, Suffield zoning regulations, reports of engineers, the minutes of the meetings and the transcripts of the proceedings of February 28, 2000, and March 20, 2000. The applicant, George Colli, Jr., submitted a plan to the defendant commission to create a 34 or 35 lot subdivision called Barley Sheaf Farm Subdivision. The plan proposed one "boulevard" type access to Halladay Avenue East, which was northerly to the property. The access involved slight accommodation to a wetland area. The parcel contains significant wetlands area in its western portion; North Street, state highway Route 75, lies to the west of the wetlands area.
At a public hearing on February 28, 2000, salient features of the plan were submitted and discussed. The town engineer, Gerald Turbet, summarized the physical plan and commented at some length on the "Hesketh Report", which was a study and recommendation for the proposal prepared by traffic engineers engaged by the applicant. The attorney for the applicant spoke as well. A number of residents spoke, most of whom opposed the project. A number of objections were expressed; it is fair to state that the greatest concern, as expressed by those speaking at the hearing, involved the traffic conditions on Halladay Avenue, the proposed outlet for traffic to and from the subdivision. The prevailing sentiment was that the road was narrow and featured at least one sharp corner. People drove too fast on the road and there had been a number of accidents. Adding more cars would, in the estimation of some of the speakers, only make the problem worse. The neighbors by and large preferred access via North Street (Route 75), which is a wider thoroughfare. Concerns were also expressed about the invasion of wetlands necessary to accomplish access via Halladay Avenue.
The commission also was presented with evidence that the town's Conservation Commission had considered the wetlands issue and viewed negatively the impact on wetlands that ingress and egress to and from North Street would impose. There was evidence that the impact on wetlands caused by the Halladay Avenue boulevard was less significant. The Hesketh Report suggested that the traffic count on Halladay Avenue was 1200 cars daily, with peak hours of 67 per hour in the morning and 208 per hour in the afternoon. The curve was about a quarter mile from the proposed intersection of the access boulevard and Halladay Avenue, and sight lines were satisfactory. The report, which was implicitly endorsed by the town engineer, noted the relatively high frequency of accidents but stressed CT Page 10870 that the great majority were single car accidents caused by excess speed and the topography of the street; traffic volume was not a factor in the accidents. More detail will be supplied in the discussion of each claim.
As stated above, the commission approved the subdivision plan, with conditions not relevant here, and the plaintiffs appealed to this court. In their complaint, they raised four claims of error: that the plan should not have been approved because there was only one means of ingress and egress; that the commission failed to consider "the existing rights of the aggrieved persons, their children and their safety"; that the decision was tainted by the continued participation of a recused member of the commission; and that the return of the record was incomplete. The latter two claims have not been briefed or argued and are deemed abandoned; the second claim is so vague that it is hard to tell if it has been briefed or not.
The plaintiffs' brief, filed on December 8, 2000, raises four somewhat different grounds for appeal: that commission failed to consider potential unreliability of the Hesketh report; that it failed to take into consideration traffic problems already existing on Halladay Avenue, specifically accidents on the sharp curve and icing; that the commission considered evidence offered by one of its members after the close of the public hearing; and that it failed to consider safety issues and instead "granted excessive accommodation" to the Conservation Commission regarding the placement of access to Halladay Avenue rather than to North Street. The parties have addressed the issues briefed.
The first issue concerns the Hesketh report. This report, prepared by traffic engineers retained by the applicant, was considered by the commission and has been included in the record. (Record 13). A review of the transcript shows that the commission considered the report, as did the town engineer in his written report (Record 7) and oral report to the commission. The report noted that 1220 cars per day traveled on Halladay Avenue, with peaks of 67 cars per hour in the morning and 208 in the evening. The plaintiffs argue that these numbers cannot be accurate, and therefore any reliance on the report fatally tainted the commission's decision.
The short answer is that the commission did consider the apparent discrepancy (Feb. 28 transcript 6-7). The numbers are not necessarily erroneous and, in any event, decisions involving the credibility of evidence are peculiarly within the province of the commission. "The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency. The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached." CT Page 10871Burnham v. Planning Zoning Commission, 189 Conn. 261, 265 (1983). The commission was entitled to view the report with whatever degree of credence it deemed appropriate, and the court may not substitute its judgment as to factual matters for the judgment of the commission.[1]
As to the first issue, then, I find in favor of the defendants.
The second claim is that the commission improperly approved the subdivision because it failed to consider the impact of the subdivision on Halladay Avenue. As stated above, many of the residents of the neighborhood testified about difficulties with the roadway and traffic on the road. It is true that when zoning regulations permit or require inquiry into off-site traffic situations, it is at least permissible and perhaps mandatory for a commission to consider off-site traffic concerns;Friedman v. Planning Zoning Commission, 222 Conn. 262, 266 (1992); at least to the extent that the proposed subdivision directly affects the off-site condition. Property Group, Inc. v. Planning ZoningCommission, 226 Conn. 684 (1993). Section 307(c) of the Suffield Subdivision Regulations (Record 14) provides that:
 The existing street to which the proposed subdivision street connects shall be of sufficient width and have a suitable travel way, grade and alignment as determined by the Commission to provide adequate access for fire protection, other emergency, utility and highway maintenance services to the subdivision and sufficient to accept the traffic to be generated by the proposed subdivision street without undue hazards to vehicles and pedestrians.
It was, then, appropriate and perhaps mandatory for the commission to consider the effect of the proposed subdivision on off-site traffic. The commission did not specifically make findings on the issue; the court, then, is to review the record to see if the decision is supported by substantial evidence. If it is, the court is not to substitute its judgment for that of the commission. Jaser v. Zoning Board of Appeals,43 Conn. App. 545, 548 (1996). A review of the record in this case shows that the commission did in fact consider the issues. As noted above, considerable attention was paid to Halladay Avenue. Evidence was presented concerning the traffic counts and the physical characteristics of the road. There was evidence that the road was a rural road and the width was twenty to twenty-two feet wide.[2] Although indeed there had been accidents on the road, evidence was presented to the effect that the accidents were not caused by the volume of traffic. The fire department reviewed the plan and had no objection on safety matters, other than the names of the proposed streets. There was evidence regarding the safety of the line of sight entering Halladay Avenue from the proposed CT Page 10872 subdivision. In sum, there was sufficient, though by no means undisputed, evidence presented to support the conclusion that Halladay Avenue was capable of "accept[ing] the traffic" to be generated by the proposed subdivision.
Additionally, the subdivision regulations (§ 902) require that, "Normally a subdivision shall have two means of ingress and egress. In the case of physical or other hardship, the Commission shall determine whether a subdivision will require two entrances and exits or a divided roadway for safety purposes." Again, no specific finding was made, so I have examined the record to determine whether there was substantial evidence to meet the requirement. There were no concerns expressed in the report of public safety officials regarding the safety of the divided access roadway. It is apparent from the record that the commission considered the possibility of access to North Street, but that this proposed roadway would infringe on wetlands to a greater degree than the Halladay Avenue proposal. (E.g., Transcript of February 28 public hearing, p. 42). Maps submitted in connection with the application show the large area of wetlands in the western section of the subdivision, and there was information before the commission to the effect that the Conservation Commission was opposed to the North Street access. As stated above, the maps indicate a very minor infringement on the Halladay Avenue access, which was proposed as a divided "boulevard" type roadway. There is substantial evidence, then, that the Halladay Avenue access was favorable; so far as § 902 is concerned, there was evidence to the effect that developing both access routes would constitute even greater infringement to wetland areas. There was sufficient evidence supporting the commission's decision in favor of one access onto Halladay Avenue.
The next contention of the plaintiffs is that a member of the defendant commission improperly visited the scene after the public hearing and reported his findings to the other members of the commission during their discussion of the issues and prior to the vote. As mentioned above, the Hesketh report stated that Halladay Avenue was 20-22 feet wide, and information regarding traffic counts was part of the record considered by the commission. A letter from a citizen, who was generally against using Halladay Road unless it were to be improved, was also part of the record. This letter, written by an aviation inspector interested in safety issues, stated that the road was "only Twenty-two (22) feet wide". (Record 10). The town engineer reported that the access was 400-500 feet from a relatively sharp curve in the road. During the public hearing on February 28, 2000, one resident referred to Halladay Avenue as a sixteen-foot roadway, and subsequent speakers picked up on the number.
At the discussion phase of the process, on March 20, 2000, Commissioner Burke reported that he had been to Halladay Avenue and that it was 22 CT Page 10873 feet wide. He further reported that he had called the state Department of Transportation and received a traffic count on North Street of 6600 cars per day, which he compared to the count of 1200 per day on Halladay Avenue. The plaintiffs argue that the ex parte visit and subsequent report violated the plaintiffs rights to be aware of evidence before the commission and to respond to it.
As a general proposition, zoning commission members are entitled to act on their own knowledge in addition to evidence presented in formal fashion. Blakeman v. Planning Commission, 152 Conn. 303, 307 (1965). Members are entitled to consider knowledge gained through personal observation. Burnham v. Planning Zoning Commission, 189 Conn. 261, 267
(1983). The general rule is qualified somewhat, however, in the context of observations made after the public hearing or in contexts otherwise insulated from public comment.[3] It is proper to receive evaluative information from theoretically neutral professional advisers, such as town counsel or town engineers, regarding evidence previously received.Norooz, supra, 572-74; Spero v. Zoning Board of Appeals, 217 Conn. 435,445 (1991). In some situations it is improper to receive factual input of new evidence after the close of the public hearing even from internal sources. In Feinson v. Conservation Commission, 180 Conn. 421 (1980), a commission member investigated highly technical information on his own and reported his findings to the commission, without extending to the applicant the opportunity to respond. In these circumstances the Supreme Court found error. In so finding, the court made several critical distinctions: it was error where the commissioner had no special expertise in the field he reported on and the area required technical expertise. The court stressed that historically members have been allowed to rely on their knowledge in areas such as "traffic congestion andstreet safety"; id., at 427 (emphasis added); and the court recognized a meaningful distinction between technical knowledge and matters within the ordinary expertise of commission members. Id., p. 429. Simply put, there is a significant chance of a decision's being made improperly in the former instance; in the latter case, there is far less reason to fear erroneous decisions because of not understanding or misinterpreting the issues.[4]
Distinctions have also been drawn between evidence submitted by a party after the conclusion of the public hearing and evidence gained by personal observation or by neutral agents of the commission. See, e.g.,Carlson v. Fisher, 18 Conn. App. 488, 503-05 (1989). As stated inBrookfield Plaza Ltd. Partnership v. Zoning Commission, 21 Conn. App. 489,494 (1990):
 While the commission, acting in its administrative capacity, must act in a manner consistent with the due CT Page 10874 process notion of fundamental fairness, we conclude that the commission is not required to provide an opportunity for rebuttal when it relies on the knowledge and experience of one of its members on nontechnical issues. The chairman's report was merely a summary of his personal observations of the area and of what had transpired at the public hearing, followed by a recommendation that the application be denied for not complying with the requisite regulations. Among the specific inadequacies listed in the report were problems related to pedestrian and traffic safety, clearly nontechnical subjects. As stated in Feinson, "[w]e have in the past permitted lay members of commissions to rely on their personal knowledge concerning matters readily within their competence, such as traffic congestion and street safety. . . ." Id., 427. Furthermore, "[t]he members of the commission were entitled to consider any facts, concerning the area, traffic, intersection and surrounding circumstances, which they had learned by personal observation. . . ." Forest Construction Co. v. Planning Zoning Commission, supra, 675. Their conclusions as to the effect of the network of roads in and around the shopping center on traffic safety and as to hazards to the public could be reached without technical knowledge. See id.
In short, the ex parte investigation and report in this case does not present any unfairness to the litigants. The parties were aware of the concerns regarding Halladay Avenue; indeed, much of the hearing was devoted to those concerns. The investigation was not done by a party or person acting on behalf of a party, and the "investigation" was far from technical. Finally, substantial evidence already was introduced at or prior to the public hearing regarding the state of the roadways.[5]
See, e.g., Brookfield Plaza, supra; Norooz v. Inland Wetlands Agency, supra, 570-74; First Hartford Realty Corp. v. Plan Zoning Commission,165 Conn. 533, 545 (1973).
Finally, the plaintiffs claim that the defendant commission abdicated its responsibilities in favor of the wetlands commission and did not address safety concerns. The short answer is that the defendant commission certainly considered the views of their colleagues, but nowhere does the transcript or other portions of the record indicate that the defendant commission believed that it was bound by its views. Access via North Street was considered at the public hearing; see, e.g., p. 42 of the Feb. 28 transcript; and several of the commissioners tentatively CT Page 10875 expressed the view after the public hearing that North Street might be preferable. See pp. 9 et seq. of the March 20 transcript. There was substantial evidence supporting the decision which ultimately was made, however, and, on the authority cited above, I will not disturb the judgment of commission if supported by evidence.
The decision of the zoning board is not to be disturbed unless the decision was arbitrary or illegal. Burnham, supra, 266. The burden of proof is on the plaintiff to show that the board acted improperly. Sperov. Zoning Board of Appeals, supra, 440. Because the burden has not been met in this case, the appeal is dismissed.
Beach, J.